64 A.3d 1036

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**John M. MARCONI, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 2011.

Decided Jan. 22, 2013.

Amy Zapp, PA Office of Attorney General, Harrisburg, for Commonwealth of Pennsylvania.

Gregory A. Henry, Bradford, for John M. Marconi.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice SAYLOR.*

Appeal was allowed to consider whether sheriffs and their deputies have the authority independently to establish and conduct suspicionless roadside sobriety checkpoints.

### I. Background

Section 6308(b) of the Vehicle Code, 75 Pa.C.S. § 6308(b), prescribes that a "police officer" engaged in a systematic program of checking vehicles or drivers may stop vehicles to secure information to enforce the provisions of the title. Such provisions include the prohibition against driving under the influence of alcohol or controlled substances ("DUI"). *See* 75 Pa.C.S. § 3802.

In September 2007, sheriffs and deputies of the Forest and Warren County Sheriffs' Departments (the "Sheriffs") established a temporary sobriety checkpoint in Forest County.[1]

---

\* This matter was reassigned to this author.

1. While the Sheriffs were assisted by other county personnel, the identity and authority of such personnel is not relevant to the issue before this Court.

Appellee drove a vehicle into the checkpoint, was stopped, manifested signs of alcohol use, and underwent field sobriety and chemical testing. Based on the results, he was arrested and charged with DUI and other offenses.

Appellee challenged the authority of the Sheriffs to conduct suspicionless stops and sought suppression of all evidence obtained as a result of his detention. He invoked a line of this Court's decisions holding that, absent specific statutory authorization, sheriffs are not "police" or "law enforcement" officers authorized to conduct independent investigations where no breach of the peace or felony has been committed in their presence. *See, e.g., Commonwealth v. Dobbins,* 594 Pa. 71, 934 A.2d 1170 (2007) (holding that sheriffs lacked the authority to conduct independent investigations under the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780–101–780–144); *Kopko v. Miller,* 586 Pa. 170, 892 A.2d 766 (2006) (holding that sheriffs are not authorized to conduct independent investigations under the authority of the Wiretapping and Electronic Surveillance Act, 18 Pa.C.S. §§ 5703–5728). More specifically, Appellee contended that the Sheriffs are not "police officers" for purposes of Section 6308(b) of the Vehicle Code. Thus, Appellee asserted, the stop was illegal, implicating the exclusionary rule.[2]

The Commonwealth countered that sheriffs' authority to enforce the Vehicle Code was established in *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299 (1994) (holding that duly-trained sheriffs and their deputies have authority to make warrantless arrests for motor vehicle violations committed in their presence). In particular, the Commonwealth stressed *Leet's* reli-

---

2. *See generally Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914) (implementing the exclusionary rule precluding the federal courts from admitting evidence procured in violation of an accused's Fourth Amendment rights); *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961) (holding that, per the Fourteenth Amendment, "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court"); *Commonwealth v. Gordon,* 546 Pa. 65, 71, 683 A.2d 253, 256 (1996) (explaining that the exclusionary rule also operates to enforce rights under Article I, Section 8 of the Pennsylvania Constitution).

ance on the historical, common-law powers of sheriffs, as follows:

> Unless the sheriff's common law power to make warrantless arrests for breaches of the peace committed in his presence has been abrogated, it is clear that a sheriff (and his deputies) may make arrests for motor vehicle violations which amount to breaches of the peace committed in their presence. Thus, we search the statute[, *i.e.*, the Vehicle Code,] for authority abrogating the common law power of the sheriff, rather than statutory authority for the sheriff to enforce the law—authority he has always possessed under common law. In other words, although the Superior Court searched in vain for a provision which grants the sheriff an enforcement power under the motor vehicle laws, it is instead necessary to search for a statutory provision which removes the enforcement power of the sheriff (which pre-existed the statute). The latter search is equally vain; there is, in the motor vehicle code, no unequivocal abrogation of the sheriff's common law power to arrest. It is evident, moreover, that the power to arrest subsumes the power to stop, detain, and investigate a motorist who breaches the peace while operating a motor vehicle in the presence of the sheriff.
>
> In short, it is not necessary to find a motor vehicle code provision granting to sheriffs the power to enforce the code—sheriffs have had the power and duty to enforce the laws since before the Magna Carta; rather, *it would be necessary to find an unequivocal provision in the code abrogating the sheriff's power in order to conclude that the sheriff may not enforce the code.*

*Id.* at 96, 641 A.2d at 303 (emphasis added; footnote omitted). The Commonwealth highlighted that there simply is no provision in the Vehicle Code abrogating a duly-trained sheriffs' power to enforce its prescriptions using sobriety checkpoints. Furthermore, the Commonwealth observed, in *Penn. DOT v. Kline,* 559 Pa. 646, 741 A.2d 1281 (1999), this Court relied on *Leet* in condoning the use of a checkpoint by sheriffs and their deputies. *See id.* at 655, 741 A.2d at 1286 (holding that a

deputy sheriff was authorized to enforce the Vehicle Code, through implementation of its implied consent provision, at a sobriety checkpoint).

The common pleas court agreed with Appellee's position and awarded suppression. *See Commonwealth v. Marconi*, No. 95 of 2007, *slip op.* (C.P. Forest Apr. 29, 2009). In its reasoning, the court applied the line of decisions reinforcing the limits of sheriffs' common-law powers and holding that express statutory authority is necessary to support an independent exercise of investigative powers by sheriffs. *See id., slip op.* at 2–3 (citing *Dobbins*, 594 Pa. at 71, 934 A.2d at 1170, and *Kopko*, 586 Pa. at 170, 892 A.2d at 766). While, in relation to the Vehicle Code, the common pleas court recognized that such limitation manifests some disharmony with the broader language employed by the Court in *Leet* and *Kline*, the court responded with the observation that *"Kline* was decided before the Supreme Court's decisions in *Dobbins* and *Kopko* and did not have the benefit of these later holdings." *Marconi*, No. 95 of 2007, *slip op.* at 3 (explaining that, in the more current opinions, "the Supreme Court's focus has turned to the investigative powers normally reserved for police officers and not sheriffs").

The common pleas court found this distinction between investigation and arrest to be of particular significance in the arena of sobriety checkpoints, since suspicionless stops implicate sensitive constitutional rights. The court explained:

"DUI roadblocks are an exception to a citizen's Fourth Amendment right to protection from unreasonable search and seizures and an exception to the protections afforded the citizens under Article I, Section [8] of the Pennsylvania Constitution" and found in the requirements of *Comm* [*onwealth* ] *v. Blouse* [531 Pa. 167], 611 A.2d 1177 (Pa.1992) and *Comm* [*onwealth* ] *v. Tarbert* [517 Pa. 277], 535 A.2d 1035 (Pa.1987). A DUI roadblock is inherently investigatory in nature. At a DUI roadblock a citizen is stopped, seized, and investigated as to whether or not he has been drinking. It is only after the end of the investigation that the citizen is allowed to continue or an arrest is made. This situation is

quite different from a sheriff's witnessing a driver operating a vehicle while intoxicated and pulling him over for that reason because at a DUI roadblock there is no determination of a driver[']s sobriety until after the driver's rights have been abrogated and he has been investigated by officers.

*Marconi*, No. 95 of 2007, *slip op.* at 4 (quoting *Commonwealth v. Culp*, No. 67 of 2006, *slip op.* at 4 (C.P. Forest Oct. 9, 2008)).

Finally, the common pleas court acknowledged that the Vehicle Code contains a broad definition of "police officer" as a "natural person authorized by law to make arrests for violations of law." 75 Pa.C.S. § 102. Nevertheless, the court observed that this Court's recent decisions reflect that, "when dealing with investigatory powers authorized by statute that intrude upon fundamental constitutional rights, the statute must be strictly construed." *Marconi*, No. 95 of 2007, *slip op.* at 4 (citing *Dobbins*, 594 Pa. at 85–87, 934 A.2d at 1179–80).

On the Commonwealth's appeal, the Superior Court affirmed based on reasoning similar to that of the common pleas court. *See Commonwealth v. Marconi*, 996 A.2d 1070, 1075 (Pa.Super.2010) ("[W]e decline to find that the common law authority of sheriffs includes the power to conduct an investigation in the form of a DUI roadblock when such conduct implicates serious constitutional rights of the citizens of this Commonwealth."). Responding to the Commonwealth's reliance on *Kline*, the Superior Court distinguished the decision as addressing sheriffs' powers of *arrest*, as opposed to the authority to *conduct and operate* checkpoints or suspicionless stops. *See id.* at 1072 n. 2. We allowed appeal to undertake plenary review of the correctness of the common pleas and intermediate courts' legal rulings.

Presently, the Commonwealth recognizes the inherent limitations on sheriffs' powers in settings other than the Vehicle Code. Nevertheless, it maintains that *Leet* and *Kline* establish that duly-trained sheriffs and their deputies are "police officers" for purposes of Vehicle Code enforcement. *See, e.g.,*

Brief for Appellant at 11. The Commonwealth criticizes the Superior Court for distinguishing *Kline*, since, in the Commonwealth's view, the authority to conduct the sobriety checkpoint and the power of arrest were inextricably intertwined in *Kline*, as the Commonwealth asserts they also are in the present case. *See id.* at 16 (asserting that the *Kline* Court "did not just speak in terms of only one aspect of enforcement—*i.e.*, arrest—but more collectively about the activity in general"). The Commonwealth also faults the common pleas and intermediate courts for looking to the Vehicle Code for express authority for sheriffs to establish and conduct sobriety checkpoints. In this respect, the Commonwealth points to *Leet's* instruction that the opposite approach—looking to whether the Code abrogates the enforcement authority of sheriffs—is the appropriate one. *See Leet*, 537 Pa. at 96, 641 A.2d at 303.

## II. Discussion

As reflected above, binding majority decisions of this Court confirm the general understanding that express statutory authorization is required for independent investigations by sheriffs and/or their deputies implicating constitutionally-protected interests of the citizenry. *See Dobbins*, 594 Pa. at 87–89, 934 A.2d at 1180–81; *Kopko*, 586 Pa. at 190–91, 892 A.2d at 778–79.[3] Suspicionless stops, such as those occurring at sobriety checkpoints, are plainly investigatory in nature and just as clearly implicate citizens' constitutional interests. *See, e.g., Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177 (1992) (adopting a set of guidelines to square roadside checkpoints with constitutional protections against unreasonable seizures). Accordingly, in the absence of express statutory authorization, a straightforward application of the general rule precludes

---

**3.** In *Dobbins* and *Kopko*, this Court reviewed the truncated passages of foundational statutory authority addressing sheriffs' powers, explaining that the General Assembly has limited powers and duties of sheriffs to those "authorized or imposed upon them by statute," 13 P.S. § 40, and that their primary duties are to "serve process and execute orders directed ... pursuant to the law," 42 Pa.C.S. § 2921. *See, e.g., Dobbins*, 594 Pa. at 84–85, 934 A.2d at 1178.

sheriffs and their deputies from independently establishing and conducting sobriety checkpoints.

The Commonwealth, however, counters that the required express legislative authorization already has been found by this Court, in its *Leet* and *Kline* decisions, within the Vehicle Code's definition of "police officer" as a "natural person authorized by law to make arrests for violations of law." 75 Pa.C.S. § 102. The argument goes that, because sheriffs have common-law arrest powers, they fall squarely within this definition.

In point of fact, the seminal decision, *Leet,* never framed or addressed the authority question on such terms. Rather, the *Leet* Court rejected the intermediate court's resolution of the authority question as a matter of statutory interpretation, and, instead, treated that court's central determination that the Vehicle Code's "designation [of 'police officer'] . . . does not include the sheriff or his deputies" as an irrelevancy. *Leet,* 537 Pa. at 92–97, 641 A.2d at 301–03. *Leet* focused entirely on sheriffs' common-law powers—more specifically the authority to arrest for in-presence breaches of the peace—and concluded that the only relevant statutory consideration was whether any express *negation* of that authority was to be found in the Vehicle Code. *See id.* at 96, 641 A.2d at 303.

*Kline,* on the other hand, did initially frame the question presented as involving the Vehicle Code definition of "police officer." *See Kline,* 559 Pa. at 648, 741 A.2d at 1281. Nevertheless, the dispositive issue in *Kline* centered upon a collateral concern pertaining to the extent of a deputy sheriff's training. *See id.* at 651–55, 741 A.2d at 1283–86. In terms of the underlying authority issue, the *Kline* Court never addressed or answered the definitional question which it framed. Rather, the relevant passages in the dispositional section of the opinion merely restate *Leet's* analysis and conclusion that sheriffs have the authority to enforce the Vehicle Code by virtue of their historical function as peace officers. *See id.* at 650–51, 741 A.2d at 1283.

Indeed, this Court has previously highlighted this point, *i.e.,* that neither *Leet* nor *Kline* credited the argument that sheriffs are "police officers" under the Vehicle Code definition. *See, e.g., Kopko,* 586 Pa. at 183, 892 A.2d at 774 (explaining that, "although the Court in *Leet* and *Kline* recognized the common law authority of deputy sheriffs to make arrests, *it did not discover any legislative authority empowering them to act as police officers*" (quoting *Kopko v. Miller,* 842 A.2d 1028, 1039 (2004) (emphasis added))). Instead, *Leet* and its progeny reflect "*only* that [s]heriffs are authorized to issue summonses for summary offenses and to make sight arrests for Vehicle Code violations involving breaches of the peace committed in their presence." *Kopko,* 586 Pa. at 184, 892 A.2d at 774 (emphasis added); *see also Dobbins,* 594 Pa. at 87–88, 934 A.2d at 1180 ("Faced[, in *Kopko,*] with sheriffs' assertion of much more investigative authority than this Court previously had faced, we clarified that *Leet* acknowledged nothing more than sheriffs' circumscribed authority to arrest for breaches of the peace and felonies committed in their presence, power '*no different from that of a private citizen.*'") (citation omitted; emphasis in original).[4]

Moving from the case law to the actual terms of the Vehicle Code's definition of "police officer," we acknowledge that, facially, the provision applies broadly to anyone with a power of arrest. *See* 75 Pa.C.S. § 102. Under the Statutory Construction Act, however, we presume that the General Assembly did not intend unreasonable results. *See* 1 Pa.C.S. § 1922. In this circumstance, a literal reading of the Vehicle Code's definition of "police officer" would invest enforcement authority in all citizens, in light of their common-law arrest

4. Courts remain wary of the sort of expansive reading of a judicial decision advocated by the Commonwealth here. *See generally Schering–Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.,* 586 F.3d 500, 512 (7th Cir.2009) (explaining that "uncritical generalization is a path to error" and that "[o]ne form of uncritical generalization ... is reading general language literally"); *Oliver v. City of Pittsburgh,* 608 Pa. 386, 394–95, 11 A.3d 960, 965–66 (2011) (discussing the phenomenon of loose language in judicial opinions, which is not to be substituted for focused analysis, particularly pertaining to matters outside the scope of an opinion). The subsequent decisions of this Court clarifying the scope of the *Leet* and *Kline* holdings are consistent with such concerns.

power. *See generally Commonwealth v. Chermansky,* 430 Pa. 170, 173, 242 A.2d 237, 239–40 (1968) (referencing the citizens' authority to arrest). It is manifest, however, that the Legislature did not intend to denominate the citizenry at large as "police officers" or confer vehicle-related enforcement authority upon it. Thus, we find that the Legislature's definitional reference to the authorization "by law to make arrests for violations of law," 75 Pa.C.S. § 102, refers to some form of legal authorization beyond a mere common-law power shared among Pennsylvania citizens. Since such shared power represents the extent of sheriffs' arrest authority as determined by prevailing precedent (and in the absence of specific expansion by the Legislature), we conclude that sheriffs and their deputies are not "police officers" under the Vehicle Code.

This conclusion does not alter the prevailing regime under *Leet.* Despite that the decision is not a fully-reasoned one,[5] we have accepted, and continue to accept, that duly-trained sher-

5. One of the more substantial omissions in *Leet* is the failure to consider that, for most Vehicle Code violations witnessed by an officer, the statute specifically authorizes only members of the Pennsylvania State Police to effectuate warrantless arrests of residents. *See* 75 Pa.C.S. § 6304(a). The general rule prevailing for other police officers is that they are specifically authorized to arrest only nonresidents for in-presence violations. *See id.* § 6304(b). These noted powers are "in addition to any other powers of arrest conferred by law," 75 Pa.C.S. § 6304(c), for example, arrests for DUI authorized per 75 Pa.C.S. § 3811. Nevertheless, these provisions suggest at the very least that the General Assembly may have desired to cabin warrantless arrest authority for less serious infractions, in favor of the issuance of citations, as is reflected in the prevailing Pennsylvania decisional law. *See Commonwealth v. Glassman,* 359 Pa.Super. 230, 234, 518 A.2d 865, 867 (1986) (holding that, under 75 Pa.C.S. § 6304(b), a police officer lacked authority to effectuate a warrantless arrest of a resident for certain Vehicle Code violations). The General Assembly's apparent restraint in this regard affords citizens a modicum of protection against a disproportionate encounter with the criminal justice system which might otherwise be allowable under the Fourth Amendment. *See, e.g., Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (holding that a warrantless arrest for seatbelt violations and failure to carry license and insurance documents—in which a mother was arrested and handcuffed before her three-and-five-year-old children, taken into police custody, and jailed—did not violate the Fourth Amendment's restraint on unreasonable seizures). At the very least, *Leet* should have considered the consequences of overlaying common-law arrest powers for one category of peace officers, cabined only by an

iffs may enforce provisions of the Vehicle Code to the limits of their common-law peacekeeping authority, as articulated in *Leet.* In this regard, *Leet* effectively superimposed those powers onto the Vehicle Code, while judicially inserting a training requirement into the statute, *see Leet,* 537 Pa. at 96–97, 641 A.2d at 303 ("It is certainly within the proper functioning of government and in keeping with the realities of the modern world to require adequate training of those who enforce the · law with firearms."), apparently to ameliorate undesirable ramifications of its holding which otherwise would have ensued. The decision has remained in full force and effect for the better part of twenty years, during which period the Legislature has been free to modify it (consistent with constitutional norms). Thus, sheriffs' common-law peacekeeping powers as articulated in *Leet* have been, and remain, integrated into the Vehicle Code's framework.[6]

undefined breach-of-the-peace litmus to determine arrest authority, over such a more refined statutory scheme.

*Leet* also intermixes a historical account of early English sheriffs as officials having essentially plenary law enforcement powers with later limitations on the function of American sheriffs, while offering little account for the derivation of these differences or developmental and historical nuances associated with the evolving role of peace officers. *See, e.g., Leet,* 537 Pa. at 95, 641 A.2d at 303 (summing up the Court's historical account with the comment that, "[t]o make the point, how few children would question that the infamous Sheriff of Nottingham had at least the authority to arrest Robin Hood"). Moreover, *Leet's* loose incorporation of undefined peacekeeping powers as the rational litmus for determining sheriffs' current authority under the Vehicle Code has yielded substantial uncertainties in the jurisprudence. *See, e.g., Kopko,* 586 Pa. at 190, 892 A.2d at 778 ("[O]ur courts have not mapped out definitive boundaries to define the extent of the residual common law authority of Sheriffs regarding criminal investigation and arrest."). *See generally Atwater,* 532 U.S. at 327 n. 2, 121 S.Ct. at 1543 n. 2 (explaining that the term "breach of the peace," in terms of the role of peacekeeping officials, is loosely defined and heavily context laden).

6. It has been suggested, in the Vehicle Code context, that all criminal violations represent breaches of the peace, and, therefore, there is no need to distinguish between sheriffs' peacekeeping powers and Code enforcement activities. *See, e.g., Leet,* 401 Pa.Super. 490, 513, 585 A.2d 1033, 1045 (1991) (Cirillo, J., dissenting). This sort of oversimplification, however, does not provide the necessary grounding for a reasoned judicial opinion. First, Vehicle Code enforcement entails more than

Accordingly, *Leet* and its progeny support the Commonwealth's position that sheriffs may independently establish and conduct sobriety checkpoints only to the extent that it may be shown that such checkpoints were subsumed within sheriffs' common-law peacekeeping powers, as conceived in *Leet*.[7]

According to the Commonwealth, *Kline* confirms that such powers subsume sheriffs' authority to independently establish and operate sobriety checkpoints, since in that case this Court approved the actions of a deputy sheriff taken at a checkpoint. For a number of reasons, however, *Kline* is not dispositive. First, in *Kline,* the sheriff's department at issue was assisted by five area municipal police departments in the operation of the sobriety checkpoint, *see Kline,* 559 Pa. at 648, 741 A.2d at 1281, thus substantially clouding the "independence" issue. Moreover, since, as stated, the decision was focused on a collateral training question, the opinion provides no developed reasoning which would support the notion that sheriffs have the authority to independently establish and conduct sobriety checkpoints. Presumably, the dearth of discussion of the authority issue vis-à-vis checkpoints is on account of the framing of the litigants' contentions, as no challenge on the overarching authority question appears to have been asserted. In light of the absence of a relevant focus, we decline to read *Kline* as transforming traditional, common-law peacekeeping powers into authority to conduct suspicionless stops. *See supra* note 4.

Furthermore, we differ with the Commonwealth's position that a power to arrest at a sobriety checkpoint and the authority to independently establish and conduct the check-

just arrests for criminal violations, as exemplified by the present case concerning the establishment of checkpoints to conduct suspicionless stops. Second, there are Vehicle Code violations constituting summary offenses which do not readily comport with the conception of a breach of the peace, for example, the failure to employ a seat belt. *See* 75 Pa.C.S. § 4581(b); *cf. Atwater,* 532 U.S. at 327 n. 2, 121 S.Ct. at 1543 n. 2 (assuming, albeit without definitively deciding, that a seatbelt violation is not a *per se* breach of the peace).

**7.** We have acknowledged that *Leet* could have been a better developed opinion, *see supra* note 5; however, there is a salutary aspect in that some of the deficiencies are offsetting in relation to others.

point in the first instance are inextricably intertwined. In point of fact, if the Sheriffs lacked the latter authority pertaining to the checkpoint at which Appellee was stopped without particularized suspicion and tested for effects of alcohol intoxication, there could have been no valid ensuing arrest. *Cf. Dobbins,* 594 Pa. at 89, 934 A.2d at 1181 (directing suppression of all evidence discovered through an investigation by sheriffs' deputies which exceeded the bounds of their authority). Thus, the authority to independently establish and conduct the checkpoint is a threshold issue to be considered on its own terms relative to the suppression issue.

In terms of such independent authority, we conclude essentially where we began. Again, suspicionless stops are not made based on an in-presence breach of the peace or commission of a felony; rather, they are inherently investigatory. *Cf. Commonwealth v. Dobbins,* 880 A.2d 690, 696 (Pa.Super.2005) (Del Sole, P.J., dissenting) ("In this case, the sheriffs were conducting an investigation, thus looking for a breach of the peace, not witnessing one."). Since *Leet,* majority decisions of this Court have repeatedly confined sheriffs' non-statutory arrest powers to those for in-presence breaches of the peace or felonies. *See Dobbins,* 594 Pa. at 87–89, 934 A.2d at 1180–81; *Kopko,* 586 Pa. at 183, 892 A.2d at 774. Accordingly, the *Leet* rationale—which defines sheriffs' common-law arrest powers for present purposes—in no way authorizes the independent establishment and conduct of suspicionless roadside checkpoints by sheriffs or sheriffs' deputies. As amply related by the common pleas and intermediate courts, suspicionless stops represent a peculiar—and highly regulated—exercise of *police* powers, which are particularly broad in matters pertaining to highway safety. *See Commonwealth v. Mikulan,* 504 Pa. 244, 247, 470 A.2d 1339, 1340–41 (1983).

■ The members of this Court maintain great respect and express gratitude for sheriffs and their deputies in the performance of indispensable public services within their realm. We reiterate, however, that they are not police officers—nor are they invested with general police powers beyond the

authority to arrest for in-presence breaches of the peace and felonies—in the absence of express legislative designation.

We hold that the Sheriffs did not have the authority to independently establish and conduct the suspicionless sobriety checkpoint at which Appellee was arrested.[8]

The order of the Superior Court is affirmed.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices BAER and TODD join the opinion.

Justice EAKIN files a concurring opinion.

Justice McCAFFERY files a dissenting opinion.

Justice EAKIN, concurring.

I agree with the majority that sheriffs and deputies are not authorized to initiate the checkpoints themselves, but there is nothing in our governing case law or statutes precluding sheriffs from assisting when police are running DUI checkpoints. Where the sheriffs are acting in aid of police and under their supervision, the law enforcement status of the sheriffs allows them to participate in a checkpoint; it does not extend to the unilateral initiation of the checkpoint, however. Thus, this checkpoint was invalid and any evidence gathered therefrom properly suppressed.

**8.** Here, as in *Dobbins:*

> Nothing in this Opinion ... should be construed to limit sheriffs' well-documented and salutary role in support of those law enforcement agencies so authorized [to conduct law enforcement investigations], nor should our ruling be read to suggest that the General Assembly lacks authority to grant broader investigatory power to sheriffs in this or other contexts. Those questions simply are not before us.

*Dobbins,* 594 Pa. at 89 n. 21, 934 A.2d at 1181 n. 21.

Additionally, our opinion here does not address the circumstances of sheriffs or deputies who may be accorded general police powers or denominated "police officers" by the General Assembly, as is the situation in counties of the second class. *See generally Allegheny Cnty. Deputy Sheriff's Ass'n v. PLRB,* 615 Pa. 126, 128, 135, 41 A.3d 839, 841, 845 (2012).

I would attribute no improper motive to the sheriff here. The absence of a significant police presence in parts of our Commonwealth such as Forest County makes it inviting for the sheriff to consider filling the void. Our decisions call sheriffs "police" for one purpose and not for another; it is no wonder the sheriff's authority is difficult to comprehensively articulate.[1] However, the law simply does not extend the sheriff's authority to the extent presented here.

Justice McCAFFERY, dissenting.

I respectfully dissent because I conclude that the operation of a DUI checkpoint is within the scope of a sheriff's authority to stop, detain, and arrest a person who violates the Vehicle Code,[1] thereby breaching the peace, in the sheriff's presence. In my view, this conclusion flows directly from the law enforcement authority of a sheriff under the common law, as interpreted by our precedent, most relevantly *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (Pa.1994), and *Commonwealth of Pennsylvania, Department of Transportation v. Kline*, 559 Pa. 646, 741 A.2d 1281 (Pa.1999).[2]

In *Leet*, a sheriff stopped a vehicle driven by the defendant-appellee after the sheriff observed the vehicle pass a line of

1. The majority opinion does not address our recent decision in *Allegheny County Deputy Sheriffs' Association v. Pennsylvania Labor Relations Board*, 615 Pa. 126, 41 A.3d 839 (2012), where we held deputy sheriffs of second class counties are police officers for purposes of Act 111 bargaining rights. *Id.*, at 843. I dissented in *Allegheny County*, noting the Court should "avoid *dicta* that may prove inapplicable down the road" for these very reasons. *Id.*, at 851 (Eakin, J., dissenting) (agreeing with Chief Justice Castille that "deputy sheriffs of second class counties are not 'policemen' for purposes of Act 111 collective bargaining," but noting there is "no reason to speak to incorporation of the independently-elected sheriff into our court system"). The present case may not be affected by *Allegheny County*, but it reinforces the problem of making general categorizations of the sheriff—the actual responsibilities of the sheriff in Forest County may be quite distinct from the role of the sheriff in Allegheny or Philadelphia Counties, and putting generalized labels on that role too often leads to confusion, not enlightenment.

1. Act of June 17, 1976, P.L. 162, No. 81, *as amended*, 75 Pa.C.S. §§ 101 *et seq.*

2. Throughout this dissenting opinion, the word "sheriff" can mean a deputy sheriff or a sheriff.

traffic stopped in a no-passing zone. In the ensuing interaction, the sheriff determined that the defendant-appellee's license to drive had been suspended, noticed an open can of beer on the front seat, and also found controlled substances in the vehicle. The defendant-appellee ultimately was charged with several violations of the Vehicle Code as well as drug-related offenses. Before the trial court, he moved to suppress all the physical evidence obtained as a result of his stop and detention by the sheriff. The suppression court granted the defendant-appellee's motion, concluding that the sheriff lacked the authority to stop a vehicle for a traffic violation. *See Leet, supra* at 300–01. The Superior Court affirmed the suppression order, holding that a sheriff does not have authority to enforce the Vehicle Code or make warrantless arrests for violations thereof, even those that occur in the sheriff's presence. In reaching this holding, the Superior Court relied on several Vehicle Code provisions vesting enforcement authority specifically and explicitly in police officers. For example, 75 Pa.C.S. § 6308(a) provides, in relevant part, that "[t]he operator of any vehicle . . . reasonably believed to have violated any provision of this title shall stop upon request or signal of any **police officer** and shall, upon request, exhibit a registration card, driver's license. . . ." (Emphasis added). From this and other similar provisions of the Vehicle Code, the Superior Court concluded that the General Assembly had explicitly vested enforcement of the Vehicle Code in police officers and not in sheriffs. The Superior Court accordingly held that a sheriff was not authorized to stop a motorist and make an arrest for a Vehicle Code violation, even when the violation was committed in the presence of the sheriff.

This Court disagreed, holding "that the common law powers of the sheriff include the power to enforce the [M]otor [V]ehicle [C]ode, and that such powers have not been abrogated by statute or otherwise." *Leet, supra* at 301. Based on an historical analysis harkening back to England before the Magna Carta, the Court concluded that sheriffs had the power, under the common law, to make arrests without warrants for felonies and for breaches of the peace committed in

their presence. *Id.* at 301–03. Because the Vehicle Code contains no unequivocal abrogation of the sheriff's common law power to arrest, we held that sheriffs retain their common law authority to make arrests for motor vehicle violations that amount to breaches of the peace committed in their presence. *Id.* at 303. The power to arrest, moreover, "subsumes the power to stop, detain, and investigate a motorist who breaches the peace while operating a motor vehicle in the presence of the sheriff." *Id.*

In addition to the above holding, we also emphasized in *Leet* the need for appropriate training for sheriffs who are engaged in such law enforcement activities. Thus, we remanded the case to the trial court for a determination as to whether the sheriff who had stopped and arrested the defendant-appellee had completed appropriate law enforcement training. *Id.*

Our holding in *Leet* was subsequently clarified by our unanimous decision in *Kline, supra,* wherein "the Clinton County Sheriff's Department, with assistance from five area municipal police departments, conducted a sobriety check-point." *Kline, supra* at 1282. A sheriff stopped a vehicle driven by the *Kline* defendant-appellee at the checkpoint, and, upon detecting the odor of alcohol, obtained her consent to submit to field sobriety tests. Another sheriff conducted the field sobriety tests, which the defendant-appellee failed, and the sheriff then arrested her for DUI. *Id.* at 1282.

Although the defendant-appellee had given her consent to field sobriety tests, she refused to submit to a blood alcohol test. Therefore, the Department of Transportation notified her that her operating privilege was being suspended for one year, pursuant to Section 1547 of the Vehicle Code. Under this section, a driver's consent to chemical alcohol testing is im-plied where "a **police officer** has reasonable grounds to believe the person to have been driving ... [while under the influence of alcohol]." 75 Pa.C.S. § 1547(a)(1) (emphasis add-ed). In addition, under subsection 1547(b)(1), a person who refuses to submit to chemical testing for blood alcohol after

being placed under arrest for DUI, shall have his or her operating privilege suspended for twelve months. The *Kline* defendant-appellee appealed the suspension of her operating privilege, challenging the sheriff's legal authority to arrest her on the grounds that the sheriff was not a "police officer" within the meaning of Section 1547. *Kline, supra* at 1282. The trial court sustained the defendant-appellee's challenge, finding that the sheriff had not received "the same type of training" as municipal police officers, and thus did not qualify as a "police officer" for purposes of enforcing the Vehicle Code. *Id.* at 1283. The Commonwealth Court affirmed.

In the Commonwealth's appeal to this Court, the sole question was whether the sheriff, who had completed not just the sheriff's basic training course but also additional training in DUI and field sobriety test administration [3], "qualifie[d] as a 'police officer' for purposes of enforcing the Vehicle Code under the rationale of this Court's holding in [*Leet* ]." *Kline, supra* at 1282. We concluded that, although the sheriff had not received "the exact training as a municipal police officer," the sheriff had completed "the same type of training that is required of police officers throughout the Commonwealth" for enforcing the Vehicle Code. *Id.* at 1285; *see* n. 3. Accordingly, we held that the sheriff "was authorized to enforce the Vehicle Code," including Section 1547(a), and thus the defendant-appellee's arrest, which originated from a DUI checkpoint operated by sheriffs, was valid. *Id.* at 1286.

3. The sheriff's training in *Kline* was as follows. He had completed the basic training requirements for deputy sheriffs, completed a 4-day course of instruction in field sobriety testing provided by the Department of Education, and completed additional training at the Lackawanna Junior College Police Academy, involving 32 hours of instruction in motor vehicle codes, 8 hours of instruction in accident investigation, and 5 hours of instruction in DUI. The Vehicle Code and DUI training that the sheriff completed were the same course modules as required of municipal police cadets in an Act 120 certification program. *Kline, supra* at 1285. We concluded that this training was sufficient under *Leet* to confer authority on the sheriff to enforce the Vehicle Code. *Kline, supra* at 1285–86. Act 120 has been repealed and replaced with similar provisions found at 53 Pa.C.S. §§ 2161–71. *See Kline, supra* at 1282 n. 1.

Several years later, in *Kopko v. Miller,* 586 Pa. 170, 892 A.2d 766, 776–77 (Pa.2006), another case dealing with the authority of sheriffs, *see infra,* we summarized our holdings in *Kline* and *Leet* as follows:

[B]ecause the record in *Kline* established that the deputy sheriff had received the same type of training as municipal police officers did, we held that [the deputy sheriff] was authorized to enforce the Motor Vehicle Code by requesting a driver to submit to field sobriety and blood alcohol tests. As in *Leet,* we determined that a sheriff is empowered to make an arrest for a motor vehicle violation committed in his presence.

*Kopko, supra* at 776–77.

Considering the holdings of *Kline* and *Leet* together, I conclude that our precedent has established that an appropriately trained sheriff has the authority, in the context of a DUI checkpoint, to assess whether drivers are under the influence of alcohol, to ask those drivers whom he or she reasonably believes to be under the influence of alcohol to submit to field sobriety and blood alcohol tests, to administer those tests, and to arrest drivers who do not pass. While these activities constitute major aspects of the operation of a DUI checkpoint, I recognize that other activities are necessary as well, *i.e.,* predetermining the objective standards as to which vehicles to stop; making a decision as to time and location of the checkpoint; providing warning of the checkpoint; physically erecting the checkpoint; and momentarily stopping vehicles for a brief observation. However, I can see no reason why a sheriff who is authorized to enforce the Vehicle Code to the extent recognized in *Kline* would not also be authorized, if appropriately trained, to conduct these additional activities.[4]

4. *Kline* clarified the training available to sheriffs for enforcement of the Vehicle Code. We concluded that the deputy sheriff in *Kline* "did not receive the exact same training as a municipal police officer would receive pursuant to Act 120, [but] he completed the same type of training that is required of police officers throughout the Commonwealth as required by our holding in *Leet* for purposes of enforcing the Vehicle Code." *Kline, supra* at 1285 (internal quotation marks omitted).

The majority concludes that sheriffs lack authorization to conduct independently the activities required for a DUI checkpoint based on a "general understanding that express statutory authorization is required for independent investigations by sheriffs . . . implicating constitutionally-protected interests of the citizenry." Majority Opinion at 407, 64 A.3d at 1039. As the majority observes, this "general understanding" derives from our holdings in *Commonwealth v. Dobbins*, 594 Pa. 71, 934 A.2d 1170 (Pa.2007), and *Kopko*, 892 A.2d at 766, which concerned independent criminal investigations under, respectively, the Controlled Substance, Drug, Device and Cosmetic Act and the Wiretapping and Electronic Surveillance Act.[5] In my view, the nature and the conduct of an investigation under these criminal statutes is far from comparable to the operation of a DUI checkpoint. Constitutional constraints, of course, cabin all investigations, whether pursued under the Controlled Substance, Drug, Device and Cosmetic Act; under the Wiretapping and Electronic Surveillance Act; or under the statutory provision permitting a DUI checkpoint.[6] However, in addition, in the case of a DUI checkpoint, the specific parameters have been defined and delineated in detail by this Court, reserving little to the discretion of the law enforcement personnel conducting the checkpoint. *See Commonwealth v. Worthy*, 598 Pa. 470, 957 A.2d 720, 725 (2008); *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177, 1180 (Pa.1992); *Commonwealth v. Tarbert*, 517 Pa. 277, 517 Pa. 277, 535 A.2d 1035, 1042 (1987) (plurality). Specifically, with regard to DUI checkpoints, this Court has set forth the following requirements: the vehicle stops must be brief, with no physical search, but only a trained observation; warning of the checkpoint must be provided; the determination as to which vehi-

---

5. Respectively 35 P.S. §§ 780–101–780–144 and 18 Pa.C.S. §§ 5703–5728.

6. The mere fact that a DUI checkpoint implicates constitutionally protected interests does not move a checkpoint outside the limits of a sheriff's authority. An arrest obviously implicates constitutionally protected interests, but there is no dispute that, under defined circumstances, a sheriff has the authority to make an arrest. *See Kline, supra,* and *Leet, supra.*

cles to stop must be based on administratively pre-fixed, objective standards, not the unfettered discretion of the law enforcement agents in the field; decisions as to time and place, or even whether to hold a checkpoint, are matters reserved for prior administrative approval; choice of time and place for the checkpoint must be based on local experience as to where and when intoxicated drivers are likely to be traveling. *See Worthy, supra; Blouse, supra; Tarbert, supra.*

In my view, this strict judicial delineation of and limitation on the conduct of a DUI checkpoint severely constrains the applicability of the general rule set forth in *Dobbins* and *Kopko* to the instant case. While I acknowledge that a DUI checkpoint is a type of investigation, it is a systematic, controlled-step-by-controlled-step, highly regulated investigation, of very different character from the more open and varied, lengthier, less defined investigations contemplated under the Controlled Substance, Drug, Device and Cosmetic Act or the Wiretapping and Electronic Surveillance Act. I conclude that a DUI checkpoint investigation is more akin to the type of investigation that we considered in *Leet* and concluded was within the authority of a sheriff. Specifically, in *Leet, supra* at 303, we held that a sheriff's power to arrest "subsumes the power to stop, detain, and **investigate** a motorist who breaches the peace while operating a motor vehicle in the presence of the sheriff." (emphasis added). A motorist under the influence of alcohol who drives a vehicle into a DUI checkpoint has, in fact, breached the peace while operating his or her motor vehicle in the presence of the law enforcement agents conducting the checkpoint, and those law enforcement agents—be they police officers or sheriffs—should have the authority to investigate the breach pursuant to our prior decisional law.

While I do not dispute the majority's conclusion that sheriffs are not police officers under the Vehicle Code, I also agree with Mr. Justice Eakin that certain of our decisions have considered sheriffs as police officers for one purpose and not for another. Majority Opinion at 409–11, 412–14, 64 A.3d at

1041–42, 1043–44; Concurring Opinion at 414, 64 A.3d at 1044, (Eakin, J). As examples of specific purposes for which we **have** considered sheriffs as police officers, one need look no further than *Leet* and *Kline* wherein, as discussed above, we concluded that sheriffs had the authority to enforce specific provisions of the Vehicle Code despite the apparently exclusionary statutory text specifically granting such authority to police officers.

In sum, based on our holdings in *Kline* and *Leet,* I would hold that if sheriffs are appropriately trained, they have the authority to operate DUI checkpoints independently and fully. In my view, the majority's conclusion that sheriffs do not have authority to conduct DUI checkpoints—regardless of how well they are trained and regardless of whether, under *Kline* and *Leet,* they would have qualified as "police officers" for specific enforcement of the Vehicle Code—is inconsistent with our reasonable and logical holdings in these precedents.[7] Accordingly, I must respectfully dissent.

---

7. I agree with and want to underscore Mr. Justice Eakin's observation that "the actual responsibilities of the sheriff in Forest County may be quite distinct from the role of the sheriff in Allegheny or Philadelphia Counties." Concurring Opinion at 415 n. 1, 64 A.3d at 1044 n. 1 (Eakin, J). Furthermore, I agree that the "absence of a significant police presence in parts of our Commonwealth such as Forest County makes it inviting for the sheriff to consider filling the void." *Id.* at 1, 641 A.2d 299. One important void is the conduct of DUI checkpoints. *See Tarbert, supra* at 1042 (discussing DUI checkpoints as a law enforcement procedure, similar to, but more effective than, roving patrols in achieving the goal of removing drunk drivers from the roadways). I cannot conclude that the General Assembly intended that those counties

without a significant police presence should be precluded from filling that void.