J-A26029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JARMAR PEARSON | : | |
| Appellant | : | No. 418 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 16, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001155-2022

BEFORE: BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED: January 17, 2025**

Jarmar Pearson ("Pearson") appeals from the judgment of sentence imposed by the Allegheny County Court of Common Pleas ("trial court") following his convictions for two counts of driving under the influence ("DUI") and associated summary traffic offenses. Pearson asserts that the sheriff who effectuated the traffic stop was unauthorized to do so, thus requiring suppression of all evidence. We affirm.

On January 3, 2022, Deputy Zachary Weaver of the Allegheny County Sheriff's Office observed a vehicle swerve into the opposing lane of traffic, almost striking an oncoming vehicle. Deputy Weaver checked the vehicle's registration and learned that it had expired. Based on the traffic violations, he stopped the vehicle and spoke to Pearson, the sole occupant. Deputy Weaver believed that Pearson was intoxicated and asked him to submit to field sobriety tests. Pearson agreed, and based on his performance was arrested.

He consented to a blood draw; testing established that his blood contained Fentanyl and its metabolites. The Commonwealth thereafter charged Pearson with two DUI violations and two summary traffic violations.

Pearson sought to suppress all evidence on the basis that sheriffs lack both statutory and common law authority to enforce the Vehicle Code violations cited by Deputy Weaver as the basis for the stop. The trial court denied the suppression motion. Subsequently, following a bench trial, Pearson was found guilty and sentenced to three to six days of incarceration and a six-month period of probation. He timely filed a notice of appeal, raising the same suppression issue in his concise statement.

The trial court filed its Rule 1925 opinion, concluding that Deputy Weaver was authorized to seize the vehicle under two sources of power. First, the trial court noted that "Allegheny County is a second-class county," and sheriffs therein are statutorily defined as police officers authorized to enforce the Vehicle Code. Trial Court Opinion, 1/30/2024, at 4 (pagination supplied). Alternatively, the trial court determined that Deputy Weaver validly seized Pearson's vehicle under a common law power to address breaches of the peace. *Id.* at 5. On appeal, Pearson contends that the trial court erred and that it should have granted his motion to suppress. Pearson's Brief at 7.

"The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." ***Commonwealth***

*v. Coles*, 317 A.3d 659, 663 (Pa. Super. 2024) (citations and quotation marks omitted). We apply a de novo standard to questions of law. *Id.*

Preliminarily, we agree that Pearson would be entitled to suppression of all evidence as a matter of law if Deputy Weaver lacked authority to seize the vehicle. That the traffic stop would be constitutionally permissible if observed by a police officer authorized to enforce the Vehicle Code is irrelevant. *See Commonwealth v. Price*, 672 A.2d 280, 284 (Pa. 1996) (concluding that FBI agent Mark Sites was not authorized to make a traffic stop that led to DUI charges, and finding that "[t]he fact that [Price] could have lawfully been arrested by someone other than Agent Sites is clearly inconsequential to a determination of whether Agent Sites' actions warrant the remedy of exclusion").

Our task, therefore, is to determine whether Deputy Weaver was authorized by the General Assembly to enforce the Vehicle Code, which permits "police officers" to seize a vehicle if he or she reasonably suspects a vehicular violation. 75 Pa.C.S. § 6308(b). "Police officer" is defined as "[a] natural person authorized by law to make arrests for violations of law." *Id.* § 102. The legislative branch has elsewhere defined "police officer" in two contexts that are pertinent to our analysis. Section 103 of the Crimes Code defines the term "police officer," in relevant part, to "include the sheriff of a county of the second class and deputy sheriffs of a county of the second class who have successfully completed the requirements under ... the Municipal

- 3 -

Police Education and Training Law [MPETL]." 18 Pa.C.S. § 103.[1] The MPETL[2] sets forth standards all municipalities must follow for training police officers, and it again defines a "police officer" as, inter alia, "[a] deputy sheriff of a county of the second class." 53 Pa.C.S. § 2162(2). A county of the second class is defined as those "having a population of at least 1,000,000 but less than 1,500,000 inhabitants." 16 Pa.C.S. § 310(2). Allegheny County meets that criterion.[3]

In support of his claim of error, Pearson relies on **Commonwealth v. Marconi**, 64 A.3d 1036, (Pa. 2013), a case involving sheriffs from Warren and Forest Counties establishing temporary sobriety checkpoints. The **Marconi** Court acknowledged that section 102 of the Vehicle Code "facially … applies broadly to anyone with a power of arrest." **Id.** at 1041. The Court declined to read that language literally, as citizens also retain a common-law

_____

[1] Deputy Weaver testified that to become a sheriff he was required to complete a six-and-a-half month training at the Allegheny County Police Training Academy. N.T., 1/19/2023, at 4.

[2] 53 Pa.C.S. §§ 2161–2172.

[3] The "classification of counties shall be ascertained and fixed according to population by reference to the Federal decennial census." 16 Pa.C.S. § 311(a). There is a certification process for reclassifications, as "it is the intent of this section that the classification of a county may not be changed because its population has decreased at the time … but rather only after the change is demonstrated by two Federal decennial censuses …." **Id.** § 311(c). The 2020 census lists Allegheny County as having a total population of 1,250,578. https://data.census.gov/profile/Allegheny_County,_Pennsylvania?g=050XX0 0US42003 (last visited Jan. 7, 2025).

arrest power and courts "presume that the General Assembly did not intend unreasonable results." **Id.** Our Supreme Court concluded that the definition "refers to some form of legal authorization beyond a mere common-law power shared among Pennsylvania citizens." **Id.** "Since such shared power represents the extent of sheriffs' arrest authority as determined by prevailing precedent (and in the absence of specific expansion by the Legislature), we conclude that sheriffs and their deputies are not 'police officers' under the Vehicle Code." **Id.**

In reliance on **Marconi**, Pearson contends that "[t]he Court ... held that deputy sheriffs are not 'police officers' for purposes of the [ ] Vehicle Code." Pearson's Brief at 20. However, his argument does not account for a "specific expansion by the Legislature" pertinent to sheriffs in counties of the second class. **Marconi**, 64 A.3d at 1041. Indeed, the **Marconi** Court stated that its decision "does not address the circumstances of sheriffs or deputies who may be accorded general police powers or denominated 'police officers' by the General Assembly, as is the situation in counties of the second class." **Id.** at 1044 n.8.

The **Marconi** case is therefore readily distinguishable because Deputy Weaver's powers to enforce the Vehicle Code were not confined to the section 102 definition. Instead, the combination of the MPETL and section 103 of the Crimes Code definitively establishes that the General Assembly intended for sheriffs of counties of the second class to have the power to enforce violations of the Vehicle Code. **See** 53 Pa.C.S. § 2162(2); 18 Pa.C.S. § 103. Notably,

the Crimes Code's definition of "police officer" does not simply copy the definition provided by 53 Pa.C.S § 2162. Instead, it references the training conducted under the MPETL, which includes training on enforcement of the Vehicle Code. **See id.** § 2167(a) ("All municipalities of this Commonwealth … shall be required to train all members of their police departments pursuant to this subchapter prior to their enforcing criminal laws, enforcing moving traffic violations under Title 75 (relating to vehicles) or being authorized to carry a firearm.").

Reading the plain language of these provisions, they establish that the General Assembly intended for deputy sheriffs of a county of the second class to enjoy the same powers as city law enforcement officers. **See** 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). **See also Allegheny Cnty. Deputy Sheriffs' Ass'n v. Pennsylvania Lab. Rels. Bd.**, 41 A.3d 839, 845 (Pa. 2012) ("[T]he legislature's view of deputy sheriffs of counties of the second class as police officers substantially on a par with traditional municipal police could not be made more plain.").

Thus, contrary to Pearson's argument, the **Marconi** decision simply does not apply to Allegheny County sheriffs. Accordingly, we find that Deputy Weaver was a "police officer" for purposes of 75 Pa.C.S. § 102, and had the authority to effectuate the traffic stop. In light of this conclusion, we need not address whether the specific infractions constituted a "breach of the peace."

The trial court did not err in denying Pearson's motion to suppress, and we therefore affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

1/17/2025