710 A.2d 1129

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert P. ROOSE, Appellee.**

Supreme Court of Pennsylvania.

Submitted March 10, 1998.

Decided April 22, 1998.

Claire C. Capristo, Kevin F. McCarthy, Pittsburgh, for Com.

John A. Knorr, Pittsburgh, for Robert P. Roose.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal by allowance from the order of the Superior Court which reversed the conviction of appellee, Robert Roose, for DUI, related summary traffic offenses, and possession of a small amount of marijuana. The Superior Court ruled that the traffic arrest leading to the convictions was conducted by constables who had no authority to enforce the Motor Vehicle Code. The sole issue is whether constables have authority to make traffic stops.

On January 25, 1994, shortly after midnight, two constables were waiting at a traffic light in the private automobile of one constable. They observed appellee make an illegal left turn, so they followed him. Appellee's pickup truck hit a snowbank then swerved in front of a bus. The constable's vehicle was equipped with flashing red and blue lights and a siren; he activated them after observing appellee's reckless driving. Appellee pulled over, and the constable asked him for his license and registration. When he failed to produce them, the constable ordered him out of his truck and ultimately arrested him, handcuffed him, and placed him in the back of the constable's vehicle. City police were contacted and arrived approximately fifteen minutes later. They took appellee to a hospital where blood and urine samples disclosed an alcohol

content of .103 and .139% respectively (both higher than the legal limit of .10%).

Before trial, appellee filed a pretrial suppression motion, challenging the authority of a constable to make an arrest for motor vehicle code violations, seeking to suppress the alcohol and marijuana discovered in a search incident to the allegedly illegal arrest. A hearing on the motion was held before Judge Kathleen A. Durkin. Three months later, appellee was tried by Judge Durkin without a jury and was convicted of DUI, related summary traffic offenses, and possession of a small amount of marijuana. He was sentenced to 30 to 60 days imprisonment, 23 months probation, and fined for the summary offenses. On appeal to a panel of the Superior Court, appellee's judgment of sentence was reversed due to the court's determination that constables do not have the authority to arrest for violations of the vehicle code. We granted this appeal by allowance to consider the issue of a constable's authority to enforce the vehicle code.

The issue in this appeal mirrors the issue in *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994), which addressed the question whether sheriffs and deputy sheriffs have the authority to enforce the motor vehicle code. We now consider the authority of constables and deputy constables in the same context. *Leet* analyzed the common law authority of sheriffs, concluding that from ancient times, sheriffs possessed the authority to make arrests for breaches of the peace and that such common law authority had not been abrogated by statute, so that sheriffs were authorized to enforce the motor vehicle code by virtue of the common law. Using the same analytical approach, we cannot reach the same conclusion with regard to constables.

First, the same sources referred to in *Leet*, which provided a rich history of the common law development of the powers of the sheriff, are silent with reference to the authority of the constable. Of all the sources cited in *Leet*,[1] only Blackstone discusses the constable.

1. Blackstone, *Commentaries on the Common Law;* T.F.T. Plucknett, *A Concise History of the Common Law* (5th ed., London, 1956); Pollock

Blackstone described the office of the constable, who at one time performed what might be called ceremonial duties at high functions. Blackstone refers to petty constables having law en-forcement duties, but the duties are somewhat uncertain and seem to be "... laid upon constables by a diversity of statutes...." Blackstone, *Commentaries, supra,* Book I, The Rights of Persons, at 345. We are impressed with what appears to be a significant difference between the duties of sheriffs and constables.

Most relevant for our inquiry is the statutory basis for the powers of constables in England. Unlike sheriffs, whose powers grew in the common law tradition to include broad law enforcement authority, the powers of constables were not developed as fully in such a strong common law tradition, but were rather set forth in a series of statutes. Thus it is not appropriate to follow the analysis of *Leet, supra,* wherein we reasoned that sheriffs, due to their common law powers, had the authority to enforce the motor vehicle laws unless contra-vened by statute; conversely, as to constables, it seems proper to conclude that unless a statute empowers them to enforce the vehicle laws, then they do not possess the legal authority to do so.

We hold, therefore, that due to the absence of statutory authority for constables to enforce the motor vehicle laws, they do not possess such authority, as such authority cannot be derived from the common law as was the case for sheriffs in *Leet, supra.*

That being the case, the constables' stop of appellee's vehicle was an illegal seizure, and the fruits of the stop should have been suppressed. Accordingly, we affirm the order of the Superior Court.

Affirmed.

and Maitland, *The History of English Law: Before the Time of Edward I,* Cambridge, Boston, 2d ed., Vol. II (1899); D.M. Stenton, *English Justice Between the Norman Conquest and the Great Charter: 1066–1215* (1964). *See Commonwealth v. Leet, supra,* 537 Pa. at 93–95, 641 A.2d at 301–03.

SAYLOR, J., did not participate in the consideration or decision of this case.

CAPPY, J., concurs in the result.