J-S81037-18

2019 PA Super 88

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK AMOS ALLEN | : | |
| | : | |
| Appellant | : | No. 1203 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 29, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0001260-2017

BEFORE:   STABILE, J., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                  **FILED MARCH 22, 2019**

Appellant, Mark Amos Allen, appeals from the judgment of sentence entered in the Court of Common Pleas of Adams County.  Herein, Appellant contends the trial court erroneously denied his motion to suppress evidence of his Driving Under the Influence of alcohol ("DUI") obtained after a constable had detained him until the Pennsylvania State Police arrived to initiate the DUI investigation.  We affirm.

The trial court submits as a Pa.R.A.P. 1925(a) opinion its "Opinion on Defendant's Motion for Suppression," which sets forth enumerated findings of fact made after the court's consideration of evidence offered at the February 15, 2018, suppression hearing:

1. Constable J. Ryan Metcalf is a full time state constable elected in the Borough of New Oxford and has been a state constable for [eight] years.

_____
* Former Justice specially assigned to the Superior Court.

2. Constable Metcalf's responsibilities include the service of judicial process in the form of civil process for landlord/tenant actions, the service of subpoenas, and the arrest of individuals by warrant. Constable Metcalf is permitted to serve arrest warrants anywhere within the Commonwealth of Pennsylvania.

3. On April 24, 2017, at approximately 8:00 p.m., Constable Metcalf and Constable Gates [from Erie County] were present at 2682 York Road, Straban Township, Adams County, Pennsylvania for the execution of arrest warrants for two individuals.

4. Constable Metcalf and Constable Gates were in the living room of the residence at 2682 York Road[, which fronts Pennsylvania State Route 30], speaking with the occupant of the residence, Lorraine Witmer, concerning the arrest warrants. Constable Metcalf observed through a living room window a vehicle exit Route 30 at a high rate of speed, proceed airborne over the embankment, and enter the yard of the residence at 2682 York Road. The vehicle travelled to the rear of the residence through the yard and stopped between the residence and a trailer located in the rear of the residence.

5. Constable Metcalf and Constable Gates went to the rear of the residence and observed Defendant [hereinafter "Appellant"] in the driver's seat. There were no other passengers in the vehicle.

6. As Constable Metcalf approached the vehicle, Appellant exited the vehicle and Constable Metcalf smelled a strong odor of alcohol and an odor of marijuana. Constable Metcalf observed Appellant to be confused, [slurring his speech, and] had balance issues [such that it was] the Constable's opinion Appellant was manifestly under the influence of alcohol.

7. At 8:04 p.m., Constable Metcalf contacted the Pennsylvania State Police and was advised a PSP Trooper would have an

extended estimated time of arrival because of other incidents.

8. Constable Metcalf contacted the on-call Adams County Assistant District Attorney, Attorney Yannetti, who advised Constable Metcalf to detain Appellant for further investigation for suspicion of DUI by the Pennsylvania State Police.

9. Constable Metcalf detained Appellant and placed him in the rear of his vehicle. Constable Metcalf testified that Appellant was not free to leave.

10. Constable Metcalf did not [give] Appellant . . . his Miranda warnings after Constable Metcalf detained him while awaiting the arrival of the Pennsylvania State Police.

11. On April 24, 2017 at 9:26 p.m., Trooper Haun with the Pennsylvania State Police arrived at 2682 York Road and handled the criminal investigation on behalf of the Pennsylvania State Police.

12. Ultimately, Trooper Haun charged Appellant with several counts of driving under the influence of alcohol or controlled substances and summary traffic violations.

Trial Court Opinion, 3/13/18, at 1-3.

On March 13, 2018, the court granted in part and denied in part Appellant's motion to suppress evidence obtained from what he had argued was Constable Metcalf's unlawful detention of him. Specifically, the court granted Appellant's motion to suppress statements made by Appellant during his conversation with Constable Metcalf, but it denied Appellant's motion to suppress all other DUI-related evidence subsequently acquired by the Pennsylvania State Police.

The case proceeded to a non-jury trial, which concluded with a guilty verdict on one count of DUI. On June 29, 2018, the court sentenced Appellant to a county intermediate punishment sentence of 60 months, six months of which were to be served in a restrictive setting. This timely appeal follows.

Appellant presents one question for our consideration:

> Was Appellant unlawfully detained when two constables initially arrested him for an alleged "breach of the peace," but then held him in a caged vehicle for an additional hour and a half for the express purpose of having police investigate a suspected DUI, at the express direction of the District Attorney's Office?

Appellant's brief, at 4.

The standard of review for the denial of a motion to suppress evidence is as follows:

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

***Commonwealth v. Livingstone***, 174 A.3d 609, 619 (Pa. 2017) (citation omitted). Additionally, "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing."

***Commonwealth v. Rapak***, 138 A.3d 666, 670 (Pa.Super. 2016) (citation omitted).

In challenging the partial denial of his motion to suppress, Appellant essentially maintains that the suppression court deprived him of his Fourth

Amendment rights when it declined to suppress evidence obtained after constables unlawfully detained him for what amounted to nothing more than a violation of the Motor Vehicle Code.[1]  To support this argument, he relies upon **Commonwealth v. Roose**, 710 A.2d 1129 (Pa. 1998), where the Pennsylvania Supreme Court held that constables lacked authority to enforce the Motor Vehicle Code.  We find **Roose**, however, to be factually inapposite, as it involved a situation where a constable driving his private vehicle executed a traffic stop after he observed what he believed to be an illegal left turn committed by the defendant.

In contrast, the facts of the present case centered around the constables' observation of, and response to, a single car accident, where a car traveling at a high rate of speed dangerously left the roadway, went airborne over an embankment, and careened well into the back portion of a residential yard before coming to a stop just short of a trailer located behind the home.  N.T. at 8-10.  A visibly dazed and ostensibly intoxicated[2] Appellant remained

---

[1] We agree that Constable Metcalf effected a Fourth Amendment seizure of Appellant.

[2] Constable Metcalf testified that his training for detection of illegal substances and identification of impairment and intoxication was current, as he had most recently completed "Institute for Law Enforcement Education" update courses offered by the Adams County Department of Emergency Services.  N.T. at 12.  For present purposes, this testimony is relevant not to the question of whether Appellant was DUI but to the reasonableness of Constable Metcalf's belief that he had grounds to arrest Appellant for breach of the peace and public drunkenness.

behind the wheel with the engine running when Constables Metcalf and Gates walked to the driver's side window to encounter him.  N.T. at 10.

Confronted with these facts, it was Constable Metcalf's testimony that he had

> observed a breach of the peace and a commission of a crime in my presence, and I placed that in the hands of the appropriate primary first due [sic] law enforcement agency. . . .  I knew I had the authority to arrest him if for no other reason than for public drunkenness and for obvious breach of peace.  You know, the individual had committed an act that would tend to place other persons in danger that I observed.

N.T. at 21, 20.

As such, the Commonwealth contends the constables' detention of Appellant was in response to a witnessed breach of the peace, which brings this matter under the rationale expressed in *Commonwealth v. Taylor*, 677 A.2d 846 (Pa.Super. 1996).  *Taylor* inquired into a constable's authority to arrest and search incident to arrest when he viewed what he believed to be illegal narcotics in the possession of the defendant during an eviction.

In vacating the trial court's order suppressing all evidence, this Court conducted a comprehensive review of "the nature of power possessed by constables at common law" and held that "overwhelming authority supports the proposition that constables possessed the power at common law to make warrantless arrests for felonies and breaches of the peace."  *Id*. at 850, 851.

"Furthermore," we continued, "complying with the mandate of **Leet**,[3] we have examined the statutes and found no provision abrogating that power. Hence, since appellee's possession of a controlled substance with intent to deliver constitutes a felony . . . we are unable to escape the conclusion that [the constable] was empowered to arrest appellee." **Id**. at 851.[4]

Our jurisprudence recognizes, therefore, that the common law confers arrest powers upon constables for in-presence felonies or breaches of the peace. As the case *sub judice* involves no felony, we examine whether

---

[3] **Commonwealth v. Leet**, 641 A.2d 299, 301 (Pa. 1994) (holding "that the common law powers of the sheriff include the power to enforce the motor vehicle code, and that such powers have not been abrogated by statute or otherwise.").

[4] Contrary to Appellant's position, decisional law of this Commonwealth did not render Constables Metcalf and Gates powerless to intervene merely because Appellant's conduct had involved the operation of a motor vehicle. Taken to its logical conclusion, Appellant's argument, if accepted, would mean a constable or private citizen who physically removes a reckless driver from a stationary vehicle to protect the immediate community does so to the detriment of any ensuing Vehicle Code-based investigation.

Indeed, such an absolute proscription would represent an overly broad application of **Roose** to situations like the one at bar, where a constable's detention of a stationary driver who has left the roadway represented not the enforcement of the Vehicle Code but a response to an act one could reasonably expect to excite violent resentment, and where the perceived breach of peace was ongoing to the extent that a demonstrably reckless driver still behind the wheel with the engine running may attempt to resume driving to the disturbance of the community.

Appellant's conduct occurring within the presence of the constables constituted a "breach of the peace" as understood at common law.

Explicit guidance as to what acts represent "breaches of the peace" is limited in our decisional law.[5]   Indeed, in **Commonwealth v. Marconi**, 64 A.3d 1036 (Pa. 2013), the Pennsylvania Supreme Court alluded to the uncertain scope of this category of offenses in its discussion of sheriffs' and deputies' arrest authority for Vehicle Code violations.  Noting that the Court had not previously identified violations that would qualify as authority-triggering "breaches of the peace," the **Marconi** Court described the "breach-of-the-peace litmus" as "undefined" and "heavily context laden."  **Id**. at 1049 n.5 (criticizing precedent's "loose incorporation of undefined peacekeeping powers as the rational litmus" as the cause of uncertainties regarding sheriffs' residual common law arrest authority under the Vehicle Code).

**Marconi** further branded as an "oversimplification" a prior dissenting opinion of this Court that suggested all Vehicle Code violations represented breaches of the peace.  **Id**. at 1049 n.6 (addressing **Leet**, 585 A.2d 1033, 1045 (Cirillo, J. dissenting)).  In making this point, however, the Court may have lent some insight into the contours of a breach of the peace, as it chose a Vehicle Code violation ostensibly involving only the safety of the offending

---

[5] Black's Law Dictionary defines the term as the criminal offense of creating a public disturbance or engaging in disorderly conduct, particularly by making an unnecessary or distracting noise. BREACH OF THE PEACE, Black's Law Dictionary (10th ed. 2014).  As discussed *infra*, however, recent jurisprudence of this Court has adopted a more expansive understanding of the term.

party as an example of a violation not readily within the ambit of the term "breach of the peace." Specifically the Court stated "there are Vehicle Code violations constituting summary offenses which do not readily comport with the conception of a breach of the peace, for example, the failure to employ a seat belt. . . . *cf. Atwater*[*v. City of Lago Vista*], 532 U.S. [318,] 327 n.2 [ (2001)] (assuming, albeit without definitively deciding, that a seatbelt violation is not a *per se* breach of the peace)." *Id*.

Notwithstanding the lack of definitive guidance from the Pennsylvania Supreme Court, our jurisprudence recently addressed the question of what amounts to a breach of the peace as contemplated in our common law. Specifically, in *Commonwealth v. Copenhaver*, --- A.3d ----, 2018 Pa.Super. 333 (filed December 7, 2018), we held that a sheriff's deputy possessed authority to stop a defendant for the summary violation of driving with an expired registration sticker, as we rejected the defendant's argument that such a violation was not a breach of the peace.

In reaching this decision, we found instructive our treatment of the "breach of the peace" question in *Commonwealth v. Lockridge*, 781 A.2d 168, 169 (Pa.Super. 2001), *aff'd on other grounds*, 810 A.2d 1191 (2002), where the defendant argued that a sheriff's deputy lacked authority to issue a citation for driving with a suspended license because the Vehicle Code violation did not amount to a breach of the peace. We rejected the defendant's argument, as follows:

> [The defendant's] interpretation of **Leet** illogically limits the authority of a trained deputy to issuing citations for only those violations of the Vehicle Code that involve behavior or action similar to those actions prohibited under the disorderly conduct provision of the Crimes Code. Were we to interpret **Leet** as narrowly as [the defendant] suggests, a deputy would be prohibited from enforcing [S]ection 1543(b) of the Vehicle Code, even if violated in his presence, because the operation of a motor vehicle while under suspension does not necessarily involve, 'on any part of the driver, any intent to cause public inconvenience, annoyance, or alarm, or recklessly create risks thereof.' 18 Pa.C.S.A. § 5503. Such an interpretation of **Leet** defies logic, and we find [the defendant's] 'breach of the peace' argument devoid of merit.

**Id.** at 170 (citation and footnote omitted).

On appeal, the Supreme Court affirmed our decision, but did so on a different basis. The Supreme Court emphasized that "[t]he power to arrest, as **Leet** instructs us, emanates from the common law. The filing of a citation, however, concerns a process that is among those set out in the Pennsylvania Rules of Criminal Procedure for commencing a summary action." **Lockridge**, 810 A.2d at 1194. Thus, the Supreme Court found that our Rules of Criminal Procedure authorized the deputy sheriff to file the citation charging the defendant with a 75 Pa.C.S. § 1543(b) violation. **Id.** at 1196.

Even though the Supreme Court affirmed our decision in **Lockridge** on other grounds, **Copenhaver** found our analysis in that case salutary in determining whether the violation of driving with an expired registration sticker amounted to a breach of the peace justifying a stop:

> Although the Supreme Court affirmed our decision in **Lockridge** on other grounds, and noted that "it was not necessary for the Superior Court to pass upon [the defendant's] contention regarding a breach of the peace," we find our analysis in that case

- 10 -

to be instructive. In particular, we described the defendant's breach of the peace argument in *Lockridge* to be "unconvincing and his interpretation of the *Leet* decision faulty." *Lockridge*, 781 A.2d at 169. We opined that the defendant's "interpretation of *Leet* illogically limits the authority of a trained deputy to issuing citations for only those violations of the Vehicle Code that involve behavior or action similar to those actions prohibited under the disorderly conduct provision of the Crimes Code." *Id.* at 170. We also stated unequivocally that the defendant's "interpretation of *Leet* defies logic" and found its "breach of the peace" argument to be "devoid of merit." *Id.* Given this guidance – where we determined that driving while under suspension is a breach of the peace – we cannot say in Appellant's case that driving with an expired registration is not. Accordingly, we are not persuaded that Appellant's first issue merits relief.

*Copenhaver*, 2018 PA Super 333 at *4.

In light of this Court's understanding of what constitutes a breach of the peace for purposes of reviewing deputy sheriffs' authority to conduct a Fourth Amendment stop,[6] it is clear that the patently disruptive, intrusive, and dangerous nature of Appellant's underlying conduct clearly aligns with the "breach of the peace" concept in this context.

Confronted with such conduct, the constables here acted within their common law powers when they walked to the driver's side window, detained an ostensibly compromised Appellant in a safe manner, and immediately

_____

[6] In view of relevant jurisprudence, we discern no basis for applying a different scope to the concept of "breach of the peace" depending on whether a sheriff's, a deputy's, a constable's, or a private citizen's authority to effect a stop or arrest is under review. Indeed, in *Leet*, the Supreme Court observed that a sheriff's authority to arrest for a breach of the peace was coextensive with that of a private citizen. *See Marconi*, 64 A.3d at 1041 (Noting "we clarified that *Leet* acknowledged nothing more than sheriff's circumscribed authority to arrest for breaches of the peace and felonies committed in their presence, power 'no different from that of a private citizen.'") (quoting *Commonwealth v. Dobbins*, 934 A.2d 1170 (Pa. 2007)).

- 11 -

called the proper authorities to investigate the incident. Accordingly, we conclude there is no merit to Appellant's argument that his detention at the hands of Constables Metcalf and Gates until the Pennsylvania State Police arrived amounted to a violation of his Fourth Amendment rights requiring suppression of all DUI evidence subsequently obtained.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/2019