J-A11008-24

2025 PA Super 29

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
STEVEN AHMAD WIGGS :
:
Appellant : No. 641 MDA 2023

Appeal from the Judgment of Sentence Entered April 3, 2023
In the Court of Common Pleas of Perry County
Criminal Division at No:  CP-50-SA-0000026-2021

BEFORE:  BOWES, J., STABILE, J., and MURRAY, J.

DISSENTING OPINION BY STABILE, J.:  **FILED: FEBRUARY 6, 2025**

"The constable is a police officer."  Those are the unequivocal words of our Supreme Court in a case where the role of a constable in the Commonwealth's government was at issue.  *See In re Act of 147 of 1990*, 598 A.2d 985, 990 n.3 (Pa. 1991).  The Court's statement is also fully consistent with the Vehicle Code's definition of a police officer, and by implication, its definitions of a "police vehicle" and an "emergency vehicle" in 75 Pa.C.S.A. § 102.  I would therefore vacate the judgment of sentence because Appellant's status as a constable entitled him to equip his car with emergency lights under 75 Pa.C.S.A. § 4571.

On the evening in question, Appellant was serving as a constable in Perry County.  Blue and red emergency lights were mounted on the roof of his vehicle.  While on patrol, a state trooper pulled over Appellant and cited him for a violation of section 4571 of the Vehicle Code.  Under that statute, the

type of visual warning system that Appellant had installed is only authorized for "emergency vehicles."  75 Pa.C.S.A. § 4571(d).  The definitions section of the Vehicle Code specifies that a "police vehicle" falls into that category.  **See** 75 Pa.C.S.A. § 102.

Nothing in the Vehicle Code excludes a constable's vehicle from being considered as either an "emergency vehicle" or a "police vehicle."  In fact, a "police officer" is defined in the that title as "[a] natural person authorized by law to make arrests for violations of law."  **Id**.  Our Supreme Court has emphasized that "[i]t is the constable's job to enforce the law and carry it out, just as the same is the job of district attorneys, sheriffs, and the police generally."  **In re Act 147 of 1990**, 598 A.2d at 990.  The General Assembly has further clarified that the powers and duties of "[c]onstables, county detectives, sheriffs, deputy sheriffs, waterways patrolmen" are those "authorized or imposed upon them by statute."  Act of June 29, 1976, P.L. 475, No. 121 § 1, (codified as amended at 16 P.S. § 1216 and transferred to 13 P.S. § 40).[1]

Moreover, a number of statutory powers are expressly granted to constables, many of which involve the use of force to carry out the law.  **See generally** 44 Pa.C.S.A. §§ 7101-7178.  Constables are authorized "to carry

---

[1] In 2009, 13 P.S. § 40 was repealed as to constables by 2009, Oct. 9, P.L. 494, No. 49, § 4(2)(xxxv).  The statute was replaced by 44 Pa.C.S.A. § 7151, which contains nearly identical language.

or use firearms in the performance of ***any*** duties." 44 Pa.C.S.A. § 7148 (emphasis added). Constables are statutorily tasked with overseeing and preserving the peace at elections held in their jurisdictions (section 7152), and investigating complaints of a violation of law when directed to do so by a court (section 7157).

Unlike an ordinary citizen, constables are statutorily authorized to make warrantless arrests in their boroughs for observed violations of law, such as breaches of the peace, and "any unlawful act tending to imperil the personal security or endanger the property of the citizens." 44 Pa.C.S.A. § 7158. ***Constables are also permitted, "upon view," to make a warrantless "arrest" of any person who "[v]iolates any ordinance of the borough for which a fine or penalty is imposed***." ***Id***. (Emphasis added). The Pennsylvania Rules of Criminal Procedure likewise define a "police officer" as "any person who is by law given the power to arrest when acting within the scope of the person's employment." Pa.R.Crim.P. 103.

And although enforcement of the Vehicle Code is not within the purview of constables,[2] they are nevertheless referred to in that title as being among the class of officials who may direct traffic and issue orders to motorists: "No person shall willfully fail or refuse to comply with any lawful order or direction

---

[2] ***See Commonwealth v. Roose***, 710 A.2d 1129, 1330 (Pa. 1998).

of (1) any uniformed police officer, sheriff or constable[.]" 75 Pa.C.S.A. § 3102.[3]

It follows that since a constable is authorized by law to make arrests for violations of law (satisfying the definition of "police officer" in the Vehicle Code), they must be classified as police officers for the purposes of section 4571 in that title, and constables' vehicles must in turn be classified as police vehicles, which can be equipped with emergency lights.[4] Separately

_____

[3] The Majority has taken the untenable position that, on the one hand, the General Assembly has explicitly authorized constables to direct traffic, issue orders to motorists, and make warrantless arrests, but on the other hand, the Majority supposes that the General Assembly has implicitly deprived constables of the right to mount emergency lights, which are a means of safely performing those duties. The Majority attempts to defend this inconsistency by questioning whether emergency lights are "necessary" to carry out a constable's duties, noting that crossing guards and traffic control flaggers can carry out their own duties without that equipment. *See* Maj. Opinion, at 22-23 n.7. I note first that the "necessity" of emergency lights is not at issue here. Second, the duties of a constable are markedly different from that of crossing guards and traffic control flaggers, who have no statutory authority to make arrests, and who are not mentioned along with "any uniformed police officer, sheriff or constable" in 75 Pa.C.S.A. § 3102. Finally, the Majority's observation about the necessity of emergency lights is rather dubious, as it is well-settled law that there are circumstances in which they may be the only reasonable and narrowly tailored means available for law enforcement "to render assistance or mitigate the peril" of a motorist. ***See Commonwealth v. Livingstone***, 174 A.3d 609 (Pa. 2007). "It is undeniable that emergency lights on police vehicles in this Commonwealth serve important safety purposes, including ensuring that the police vehicle is visible to traffic, and signaling to a stopped motorist that it is a police officer, as opposed to a potentially dangerous stranger, who is approaching." ***Id***., at 621.

[4] Black's Law Dictionary defines a "peace officer" as either a sheriff or police officer who is appointed to "maintain public tranquility and order[.]" Black's Law Dictionary (12th ed. 2024). A "constable" is defined in Black's as a "peace
*(Footnote Continued Next Page)*

- 4 -

enumerating "constable vehicle" in the Vehicle Code's list of emergency vehicles would have made the Vehicle Code's definitions internally inconsistent. **See** 75 Pa.C.S.A. § 102.

In upholding the trial court's ruling that Appellant was not authorized to mount emergency lights, I believe the Majority takes a position that misapplies the law and goes beyond the scope of the matter now before us. First, the Majority overlooks that a constable easily fits the Vehicle Code's definition of a "police officer" in section 102, instead jumping immediately to an analysis of legislative intent despite the lack of any ambiguity in the term. Second, the Majority effectively rewrites section 102 by interpreting "police officers" to refer only to "persons who have a general authority to make arrests," beyond the authority of constables. **See** Maj. Op., at 15.[5] Third, the Majority ignores the questions presented in this appeal by suggesting, in reliance on

---

officer." **Id**. Our Supreme Court has referred to constable as a "peace officers." **In re Act of 147 of 1990**, 598 A.2d 985, 990 (Pa. 1991) ("Simply stated, a constable is a peace officer.").

[5] The Majority describes its interpretation of "police officer" in section 102 as a "plain reading," but it is nothing of the sort. A plain reading would not require the Majority to apply common law to interpret statutorily authorized arrest power. It would not compel the Majority to insert its own additional language into the black letter of the law. By construing "police officers" to mean "only those natural persons who have a general authority to make arrests," (beyond the authority of constables), Maj. Op., at 15, the Majority has gone out of its way to rewrite an unambiguous statute to reach a desired result.

inapplicable caselaw, that it would be unnecessary and confusing for constables to equip their vehicles with emergency lights.

"[W]here the language of a statute is clear and unambiguous, a court may not add matters the legislature saw fit not to include under the guise of construction." ***Mohamed v. Commonwealth Dep't of Transp.***, 40 A.3d 1186, 1194–95 (Pa. 2012). The provisions now being examined, sections 102 and 4571, are plain and unambiguous. A constable is a "police officer" under section 102 because the individual is "authorized by law to make arrests for violations of law." 75 Pa.C.S.A. § 102. A constable's vehicle, then, is necessarily a "police vehicle," which is in turn classified as an "emergency vehicle" for the purposes of section 4571. ***See id***. The lack of ambiguity in these provisions makes it improper for the Majority to engage in further statutory interpretation, and Appellant should prevail under a straightforward application of the law.

Regardless, even if we were permitted to ignore, or go beyond the plain meaning of those statutes, and apply rules of construction, the Majority relies on a faulty premise to justify its affirmance. It simply is not true, as the Majority asserts, that construing the definition of a police officer in section 102 to include constables would "convert every citizen into a police officer," Maj. Op., at 15, due to their mutual common law power to make arrests for an observed felony.

The disputed definition in section 102 of the Vehicle Code refers to *statutory* authorization to make arrests, which constables notably have, **see** 44 Pa.C.S.A. § 7158(1)-(3), and ordinary citizens notably lack. As was made apparent by the General Assembly, the powers and duties it has conferred upon constables are limited to those which are *legislatively enacted*. **See** 13 P.S. § 40; 44 Pa.C.S.A. § 7158. A constable's authorization "by law to make arrests for violations of law" therefore has nothing to do with the historical common law right of the "citizen's arrest."

Even by the Majority's own logic, the General Assembly could not have intended to convert all ordinary citizens into police officers by virtue of their common law rights. I agree with this. But following the premise to its logical conclusion leads to only one reasonable interpretation – that the General Assembly considered "police officers" to be individuals who are specifically tasked, by statutory enactment, with the job of enforcing the law by making arrests.[6]

---

[6] I do not see how the Majority is justified in grafting on vague qualifying terms to section 102. The Majority writes, "Rather, a plain reading of 'police officer' in § 102 leads us to the conclusion that it means only those natural persons who have a general authority to make arrests, *i.e.*, those employed as police officers by police departments." Maj. Op., at 15. This construction supposedly excludes constables, who are authorized to make arrests for "certain violations" of law. **Id**. However, section 102 does not categorize arrest authority in that manner, and the General Assembly would have been fully capable of doing so had that been its intent. Again, section 102 defines a police officer as a person who is "authorized by law to make arrests for violations of law." The definition is clear, and there is no legal basis for the Majority to parse, and gratuitously supplement, the statute's wording.

To the extent that the definition of "police officer" in section 102 is ambiguous (it is not), the only way to give the provision effect is to read it in the manner I have outlined above. This construction, classifying constables as police officers, would also comport with the rule of lenity, which requires us to interpret ambiguous penal statutes in favor of the accused. *See Commonwealth v. Shiffler*, 879 A.2d 185, 189 (Pa. 2005).

As to the principal cases relied upon by the Majority – *Commonwealth v. Leet*, 641 A.2d 299 (Pa. 1994), and *Commonwealth v. Roose*, 710 A.2d 1129, 1330 (Pa. 1998) – I would not find them to be applicable to the matter at hand. In *Leet*, our Supreme Court held that a sheriff has the power to make a warrantless arrest to enforce motor vehicle violations under the Vehicle Code despite that this power was not statutorily authorized. *See* 641 A.2d at 301. The *Leet* Court explained that sheriffs have "always possessed" that authority in common law, and it has never been statutorily abrogated. *See* 641 A.2d at 303.

Conversely, in *Roose*, our Supreme Court held only that constables lack express statutory authority to enforce motor vehicle laws, and that such authority "cannot be derived from the common law as was the case for sheriffs in *Leet*[.]" 710 A.2d at 1330. The *Roose* Court declined to adopt this Court's *dictum* in *Commonwealth v. Roose*, 690 A.2d 268, 269-70 (Pa. Super. 1997), in which we speculated that the constable's vehicle in that case was not an "emergency vehicle," and that the constable had violated the

prohibitions of section 4571. The holding was predicated strictly on the absence of any statutory or common law authority allowing constables to conduct traffic stops, *see* 710 A.2d at 1330, which, again, is not at issue in the present appeal.

The limited focus of the holdings in *Leet* and *Roose* prevent either case from having controlling effect here. Unlike in those cases, at issue in this appeal is whether section 4571 allowed Appellant to mount emergency lights on his vehicle. He was permitted to do so if he fit the Vehicle Code's definition of "police officer" in section 102, and he did.

To be sure, *Leet* and *Roose* say nothing about the construction of that definition, or whether a constable is "authorized by law to make arrests for violations of law." Those cases do not contain a single citation to section 102, or otherwise indicate that the issue now before us was even considered. Accordingly, I would find *Leet* to be inapplicable, and I would follow our Supreme Court's lead by declining to adopt the *dictum* in our *Roose* opinion, as doing so here would only thwart the intent of the General Assembly.

Thus, for all of the aforementioned reasons, it my view that Appellant's statutory construction claim is meritorious, and I must respectfully dissent from the Majority's decision on that point.[7]

_____

[7] As I would hold that Appellant's statutory construction claim entitles him to a new trial, I would find it unnecessary to address his remaining issues.

- 9 -