J-E03002-25

2026 PA Super 126

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
STEVEN AHMAD WIGGS :
:
Appellant : No. 641 MDA 2023

Appeal from the Judgment of Sentence Entered April 3, 2023
In the Court of Common Pleas of Perry County
Criminal Division at No:  CP-50-SA-0000026-2021

BEFORE:  BOWES, J., OLSON, J., STABILE, J., DUBOW, J., KUNSELMAN, J.,
NICHOLS, J., MURRAY, J., McLAUGHLIN, J., and BECK, J.

DISSENTING OPINION BY STABILE, J.:    **FILED: JUNE 17, 2026**

The very narrow issue in this case is whether Appellant, a constable,

could be cited for violating section 4571(d) of the Motor Vehicle Code ("MVC")[1]

_____

[1] Section 4571 provides in pertinent part as follows:

§ 4571.  **Visual and audible signals on emergency vehicles.**

**(a) General rule.--**Every emergency vehicle shall be equipped
with one or more revolving or flashing red lights and an audible
warning system. Spotlights with adjustable sockets may be
attached to or mounted on emergency vehicles.

**(b) Police, sheriff, fire and coroner or medical examiner
vehicles.--**

(1) Police, sheriff, coroner, medical examiner or fire police
vehicles may in addition to the requirements of subsection (a) be
equipped with one or more revolving or flashing blue lights. The
combination of red and blue lights may be used only on police,
sheriff, coroner, medical examiner or fire police vehicles.

*(Footnote Continued Next Page)*

due to having flashing red and blue lights mounted on his vehicle, when such lights are only permitted on specified "emergency vehicles," as defined in the MVC.[2] This issue of statutory interpretation only requires us to apply the clear and unambiguous language of the MVC to the facts at hand. Respectfully, I believe the Majority has improperly applied the rules of statutory construction it relies upon. The Majority's approach ignores plain statutory definitions and cherry-picks inapplicable exceptions, thwarting legislative intent. Since the MVC permits Appellant to equip his vehicle with red and blue emergency lights under sections 102 and 4571 of the MVC, I would vacate Appellant's judgment of sentence on that ground.

* * * *

**(d) Vehicles prohibited from using signals.--**Except as otherwise specifically provided in this section, no vehicle other than an emergency vehicle may be equipped with revolving or flashing lights or audible warning systems identical or similar to those specified in subsections (a) and (b).

75 Pa.C.S.A. § 4571.

[2] Although the short title of Title 75 is the "Vehicle Code," referring to it as "the Motor Vehicle Code" is consistent with the conventions of both this Court and our Supreme Court, as evidenced by countless published opinions. ***See e.g., Commonwealth v. Shifflett***, 335 A.3d 1158, 1162 (Pa. 2025); ***Commonwealth v. Chisebwe***, 310 A.3d 262, 265 (Pa. 2024).

***Constables are "police officers" as defined by section 102 of the MVC***

On June 15, 2021, Appellant was serving as a constable. Red and blue lights were mounted on the roof of his vehicle as he drove through Perry County. While on patrol, a state trooper pulled over Appellant and cited him for a violation of section 4571 of the MVC. This statute provides that the type of visual warning system Appellant had installed is only authorized for "emergency vehicles." 75 Pa.C.S.A. § 4571(d). An "emergency vehicle" is defined under section 102 of the MVC to include a "police vehicle." 75 Pa.C.S.A. § 102. In turn, a "police officer" is defined in that same section as ***"[a] natural person authorized by law to make arrests for violations of law***." ***Id.*** (emphasis added).

The Majority, in its limited discussion of section 102, insinuates that constables are not "police officers" under that provision because they have common law arrest powers, and more limited arrest powers than other types of peace officers. ***See*** Maj. Op., at 10-14. Yet, the Majority recognizes that a constable's authority to "make arrests for violations of law" does *not* arise from the common law, as it does for sheriffs and ordinary citizens. ***See id***., at 11. The Majority begrudgingly seems to agree that, under a strict and plain reading of section 102, a constable satisfies the MVC's definition of a "police officer." ***See id***.

Indeed, in section 102, the MVC defines a "police officer" as someone who has *statutory* authority ("by law") to make arrests, which constables

notably have, *see* 44 Pa.C.S.A. § 7158(1)-(3), and sheriffs and ordinary citizens notably lack. *See* 16 Pa.C.S.A. §§ 13701-13715 (Sheriff); *see also Kopko v. Miller*, 892 A.2d 766, 773-74 (Pa. 2006) (emphasizing that sheriffs have common law power "to make warrantless arrests for breaching of the peace committed in their presence," but holding that, due to the absence of "legislative authority" to make arrests, they are not authorized to conduct wiretapping under 18 Pa.C.S.A. §§ 5701-5781).

As was made evident by the General Assembly, the powers and duties conferred upon constables are limited to those which are legislatively granted. *See* 44 Pa.C.S.A. § 7151 ("Constables shall perform all duties authorized or imposed on them by statute."). A number of statutory powers are expressly granted to constables, many of which involve the use of force to carry out the law. *See generally* 44 Pa.C.S.A. §§ 7101-7178. Constables are authorized "to carry or use firearms in the performance of *any* duties." 44 Pa.C.S.A. § 7148 (emphasis added). Constables are statutorily authorized to oversee and preserve the peace at elections held in their jurisdictions (44 Pa.C.S.A. § 7152), and investigate complaints of a violation of law when directed to do so by a court (44 Pa.C.S.A. § 7157).

Constables also are statutorily authorized to make warrantless arrests in their boroughs for observed violations of law, such as breaches of the peace, and "any unlawful act tending to imperil the personal security or endanger the property of the citizens." 44 Pa.C.S.A. § 7158. Constables are permitted,

- 4 -

"upon view," to make a warrantless "arrest" of any person who "[v]iolates any ordinance of the borough for which a fine or penalty is imposed." ***Id****.* They may also direct traffic, and motorists are required to comply. ***See*** 75 Pa.C.S.A. § 3102.[3]

Accordingly, Appellant could mount red and blue emergency lights on his vehicle because he was authorized by law to make arrests for violations of law. This qualified Appellant as a "police officer," as that term is unequivocally defined in section 102 of the MVC, making his vehicle a "police vehicle" and therefore an "emergency vehicle" for purposes of section 4571.

Although our inquiry should end there, I am compelled to elaborate further on why I believe the Majority's treatment of these statutory provisions is in error.

### *"Clear and free from all ambiguity"*

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921. Our Supreme Court has likewise mandated that, "where the language of a statute is clear and unambiguous, a court may not add matters the legislature saw fit not to include under the guise of construction."

---

[3] The MVC's definition of "police officer" is not an anomaly. A constable's statutory authority to make arrests falls perfectly in line with the definition of a "police officer" in the Pennsylvania Rules of Criminal Procedure, which define such an individual as "**any person who is <u>by law</u> given the power to arrest when acting within the scope of the person's employment**." Pa.R.Crim.P. 103 (emphasis added).

- 5 -

*Mohamed v. Commonwealth Dep't of Transp.*, 40 A.3d 1186, 1194–95 (Pa. 2012); *see also A.S. v. Penn. State Police*, 143 A.3d 896, 903 (Pa. 2016) ("It is only when statutory text is determined to be ambiguous that we may go beyond the text and look to other considerations to discern legislative intent.").

The provisions now being examined, sections 102 and 4571, are plain and unambiguous. As the Majority apparently concedes, *see* Maj. Op., at 12-13, a constable must fit the MVC's definition of a "police officer" because he or she is "authorized by law to make arrests for violations of law," 75 Pa.C.S.A. § 102, and this authorization is derived not from common law, but rather from legislative enactment. *See generally Commonwealth v. Marconi*, 64 A.3d 1036, 1041 (Pa. 2013) (explaining that ordinary citizens and sheriffs are not "police officers" under this definition because their arrest power is derived solely from common law, rather than "some form of legal authorization").

Section 4571 contains no alternative definitions or express exclusions of individuals who may qualify as a "police officer." *See* 75 Pa.C.S.A. § 4571. Nothing in the context of section 4571 or the MVC as a whole would "clearly" suggest that, with respect to that specific statute, "police officer" was intended to have a different meaning than the one provided in section 102. Section 4571 does not state that a "police vehicle" must be owned by any particular entity or operated by any one of the many types of police officers in the Commonwealth. *See e.g.,* 53 Pa.C.S.A. 2162 (Municipal Code definitions

section recognizing over a dozen types of "police officer," each of which has its own duties, training requirements, and statutory authorization).

I note further that an individual need not have plenary arrest powers to qualify as a "police officer" under the MVC's definition in section 102; all that is needed is *some* degree of arrest powers, as authorized by law, and it cannot seriously be disputed that constables have such authorization. A constable, then, is a "police officer" for the purposes of section 4571, and his vehicle is a "police vehicle," which may have red and blue emergency lights mounted on it.

The Majority attempts to shift the focus away from this plain reading by determining – without citation to any legal authority – that section 4571 only "pertains to certain classes of vehicles, not to the categories of drivers." Maj. Op., at 10. In so doing, the Majority relegates Appellant's vehicle to the status of a "constable vehicle," a term which appears nowhere in the MVC. The Majority further distinguishes between "police vehicles" and "privately-owned vehicles." Finally, the Majority differentiates police officers from constables by classifying the latter as "independent contractors." **See** Maj. Op., at 7-9.

By pivoting away from the plain text of sections 102 and 4571 in this manner, the Majority overlooks that these are penal statutes, which must be strictly construed. Unless the MVC says otherwise, it is ultimately the status of the person who drives the vehicle which necessarily determines whether emergency lights are authorized. **See generally Commonwealth v.**

*Rodriguez*, 81 A.3d 103 (Pa. Super. 2013) (holding that status of constables as "not employees of the Commonwealth" was the dispositive fact which refuted contention that constable's personal vehicle was an exempt "government vehicle" for purposes of the window tinting statute, section 4524 of the MVC).

The language of sections 102 or 4571 contains no clear context which would lead one to surmise that "police vehicle" can refer to anything other than a vehicle operated by a "police officer" while carrying out official duties. The MVC's list of emergency vehicles simply provides that a "police vehicle" is one of the types of vehicle that falls into that category for purposes of the title. *See* 75 Pa.C.S.A. § 102.

The General Assembly could have easily stated that a "police vehicle" qualifies as such depending on its public ownership, just as it did with various *other* types of conveyance in the same list which were described in that fashion. *See generally id*. The absence of a public ownership requirement for a "police vehicle" establishes that its omission was intentional. *See Mimi Investors, LLC v. Tufano*, 397 A.3d 1272, 1286 (Pa. 2023) (declining to construe a statute as impliedly containing a scienter requirement, in part because "the Legislature employed the language of scienter in several other material provisions of [the Pennsylvania Securities Act], further reinforcing the notion that the absence of scienter language in Section 1-401(b) was intentional.").

Moreover, it makes perfect sense why "constable vehicle" is not expressly enumerated as an "emergency vehicle" in sections 102 or 4571 – it would have been redundant because constables fit the MVC's general definition of "police officer" in section 102. Assuming, as we must, that a constable is a "police officer," and that thier vehicle is a "police vehicle," there was no need for "constable vehicle" to be listed separately.

As to a constable's employment status, I question the import of the Majority's reference to them as "independent contractors." A constable is an elected official who holds a public office limited by term. *See generally* 44 Pa.C.S.A. §§ 7101-7178 (Constables). Our Supreme Court, in *In re Act 147 of 1990*, found it relevant that constables are "independent contractors" only insofar as that status meant they are not "employees" of the judicial branch, making them belong instead "analytically to the executive branch of government[.]" *In re Act 147 of 1990*, 598 A.2d 985, 990 (Pa. 1991).

In that *same opinion*, our Supreme Court stated that "**[t]he constable is a police officer**." *Id*., at 990 n.3 (emphasis added). The Court explained that, as an executive branch member, "[i]t is the constable's job to enforce the law and carry it out, just as the same is the job of district attorneys, sheriffs, and the police generally[.]" *Id*., at 990. This description of constables doing the job of "the police generally" directly contradicts the Majority's suggestion that a person's status as an "independent contractor" somehow makes them not a "police officer." *See id*.

Thus, Appellant should prevail under a straightforward application of statutory and decisional law, and the lack of ambiguity in these provisions makes it improper for the Majority to engage in any further statutory interpretation or construction. ***See*** 1 Pa.C.S.A. § 1921(b). By affirming the judgment of sentence, the Majority has declined to "effectuate the intention of the General Assembly" and disregarded the letter of the MVC "under the pretext of pursuing its spirit." ***Id***.; ***see also Mimi***, 297 A.3d at 1285 ("It is only upon a finding that a statute's terms are ambiguous that we turn away from the text to ascertain legislative intent by other means.").

### *The Rule of Lenity*

Only an ambiguity in the language of sections 102 and 4571 would justify the Majority's resort to applying rules of statutory construction to ascertain legislative intent. ***See*** 1 Pa.C.S.A. §§ 1921(b), 1933. In the event of such an ambiguity, the Majority would be foreclosed from adopting an interpretation that is unfavorable to Appellant.

"[W]hile statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S.A. § 1928(b)(1), and **any ambiguity in a penal statute should be interpreted in favor of the defendant**." ***Commonwealth v. Simmons***, 262 A.3d 512, 516 (Pa. Super. 2021) (*en banc*) (emphasis added). "A statute is ambiguous when there are at least two reasonable interpretations of the text." ***A.S.***, 143 A.3d at 906.

To determine whether statutory language is plain or ambiguous, it must be read in the specific and general context in which it is used. *See id*.

"In reading the plain language, '[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage,' while any words or phrases that have acquired a 'peculiar and appropriate meaning' must be construed according to that meaning." *Commonwealth v. Shiffler*, 879 A.2d 185, 189 (Pa. 2005) (citing 1 Pa.C.S.A. 1903(a)).

Here, the statutory language in section 102 and 4571 is clear and unambiguous, in that they would authorize Appellant to mount emergency lights on his vehicle. Appellant is a constable who is "authorized by law to make arrests for violations of law," making him a "police officer," as that term is defined in the MVC. 75 Pa.C.S.A. § 102.

Under sections 102 and 4571, a "police vehicle" is categorized as an "emergency vehicle" on which red and blue emergency lights may be mounted. The MVC provides no further guidance as to how these specific provisions are to be construed. Significantly, these statutes do not specifically exclude constables or their vehicles from qualifying as a "police officer" or a "police vehicle," respectively. These provisions also coincide with the statement by our Supreme Court that a "constable is a police officer." *In re Act 147 of 1990*, 598 A.2d at 990 n.3. It was therefore reasonable for Appellant to interpret the MVC as authorizing him to mount emergency lights

on his vehicle, and the rule of lenity requires this Court to adopt that reasonable interpretation in the event of an ambiguity.

The Majority ignores the rule of lenity even in its opinion where it supposes, "in the alternative," that the statutes under review are ambiguous. *See* Maj. Op., at 22. The law is clear, though, that if sections 102 and 4571 are found not to be explicit, then Appellant's reasonable interpretation must be adopted.

### *The Majority applies rules of construction, not interpretation*

Even if we were permitted to ignore or go beyond the plain meaning of the statutes now under review, disregard the rule of lenity, and apply rules of statutory construction, the Majority's reasoning still does not hold up to scrutiny.

In its opinion, the Majority states repeatedly that sections 102 and 4571 of the MVC are both clear and unambiguous. Yet the Majority is only able to glean the General Assembly's supposed intent by assuming that the General Assembly meant something other than what its enactments state. These are irreconcilable positions.

Among the rules of construction employed by the Majority are consideration of the other statutes upon the same or similar subjects, the consequences of particular interpretations, and the object to be attained by

the statutes' enactment. **See** 1 Pa.C.S.A. § 1921(c)(4)-(6).[4] The General Assembly has mandated that its intention may only be ascertained by such considerations "[w]hen the words of the statute are not explicit[.]" 1 Pa.C.S.A. § 1921(c). This Court has no authority, or need, to utilize those rules of construction for statutory language, like that in sections 102 and 4571, which is so patently clear. **See id**.[5]

---

[4] The Majority concedes that it has discussed a slew of unrelated statutes in the MVC "to emphasize the differences in how [constables and police officers] are trained given Appellant's equation of the two positions[.]" Maj. Op., at 23-24 (emphasis added). Despite the Majority's protests, I cannot help but read its extensive analysis of other statutes as applying several rules of construction. A central theme of the Majority's opinion is that the General Assembly intended to prohibit constables from mounting emergency lights because they "exist in a league of their own," Maj. Op., at 18, due to differences in their training and responsibilities from other types of peace officers. **See generally id**. The Majority thereby has considered the consequences of Appellant's interpretation (treating constables as police officers), and the supposed object to be attained by the statutes' enactment (maintaining a distinction between constables and police officers). Support for the Majority's contention that constables lack authorization to mount emergency lights under sections 102 and 4571 is based entirely on unrelated authority (consideration of other statutes).

[5] The Majority cites **Commonwealth v. Marconi**, 64 A.3d 1036 (Pa. 2013), and the line of cases cited therein, to presume that since sheriffs, sheriffs' deputies, and ordinary citizens do not qualify as "police officers" under the MVC, neither do constables. **See** Maj. Op., at 10-12. However, the facts of **Marconi** are distinguishable, and its holding was much more limited than the Majority suggests. The case concerns whether sheriffs have an "enforcement" power of "police officers" under the MVC, *i.e.*, the authority to investigate suspected violations through temporary sobriety checkpoints under section 6308(b). **See Marconi**, 64 A.3d at 402, 410-11. The **Marconi** Court's holding hinged on the fact that that sheriffs have not been statutorily authorized to establish and conduct sobriety checkpoints for the purpose of *enforcing* the MVC, and their common law arrest power did not afford them

*(Footnote Continued Next Page)*

The lynchpin of the Majority's analysis is that section 4571 of the MVC was intended to prohibit constables from mounting emergency lights on their vehicles because, *elsewhere* in the MVC, constables are sometimes enumerated separately from police officers. ***See*** Maj. Op., at 12-19. The Majority infers that, for the purposes of section 4571, constables cannot be treated as police officers in accordance with the MVC's general definition of "police officer" in section 102, and a constable's vehicle therefore cannot qualify as a "police vehicle." As previously discussed, the Majority concludes that "constables" have not been specifically authorized in section 4571 to mount red and blue flashing lights on their vehicles:

_____

that specific authority. ***See id***., at 413-14. That is, sheriffs were not authorized "by law" – statutory law – to enforce or investigate violations of the MVC in that specific manner.

The present case does not concern a constable's investigative or enforcement authority under the MVC, or a constable's authority to intrude upon a citizen's right to privacy – those issues already have been resolved. ***See Commonwealth v. Roose***, 710 A.2d 1129, 1130 (Pa. 1998) (holding that constables have no authority to enforce the MVC because "such authority cannot be derived from the common law[.]"). Our narrow inquiry here is whether, pursuant to sections 102 and 4571 of the MVC, constables *may mount emergency lights on their vehicles*, and this does not implicate the scope of a constable's authority to enforce the law or investigate crimes. Moreover, a constable has arrest power which is legislatively derived, and under the MVC, motorists are required to comply with a constable's lawful orders or directives. ***See*** 75 Pa.C.S.A. § 3102. Thus, the present case is materially distinguishable from ***Marconi*** and like cases in which an individual could not exercise certain powers as a "police officer" due to their limited common law authority to investigate or enforce a criminal statute pursuant to the MVC. ***See e.g., Commonwealth v. Dobbins***, 934 A.2d 1170, 1178-1179 (Pa. 2007) (citing cases); ***Commonwealth v. Hlubin***, 208 A.3d 1032, 1050-1052 (Pa. 2019) (citing cases).

- 14 -

> The absence of express authorization in § 4571(b)(1) for constable vehicles to use red and blue flashing lights is dispositive, as our High Court has explained that the omission of a particular alternative from a statute indicates that the legislature intended to exclude it.

Maj. Op., at 7.

The Majority treats this supposed omission of "constables" from section 4571 as the smoking gun which proves their lack of authorization to mount emergency lights. But a smoking gun, it is not. Again, constables *are* expressly authorized in section 4571(b)(1) to mount emergency lights on their vehicles because they satisfy the MVC's definition of "police officer." **See** 75 Pa.C.S.A. § 102.

Perhaps seeing the difficulty of its position – applying the rules of construction to unambiguous statutes – the Majority purports only to apply the doctrine, *expressio unius est exclusio alterius*, as a tool of statutory interpretation. However, I am unpersuaded that the Majority has truly managed to avoid the fundamental problem with its approach.

This doctrine of interpretation provides that "the inclusion of a specific matter in a statute implies the exclusion of other matters." **Thompson v. Thompson**, 223 A.3d 1272, 1277 (Pa. 2020). The doctrine has been applied in cases where, for example, one statute has expressly included a provision which has been *omitted* from a related statute:

> [T]he Legislature explicitly authorized trial courts to sentence juvenile offenders to "life imprisonment without parole" for first-degree murder convictions under Section 1102.1(a) and excluded

- 15 -

this specific language from Section 1102.1(c) which relates to second-degree murder convictions, **we decline to add language which the Legislature did not see fit to include**. **Had the Legislature intended to authorize trial courts to sentence juvenile offenders convicted of second-degree murder to life imprisonment without the possibility of parole, it would have expressly done so**.

*Commonwealth v. Sanchez-Frometa*, 256 A.3d 440, 448 (Pa. Super. 2021) (emphasis added).

As discussed above, the present matter does not involve any omission of language in sections 102 and 4571 of the MVC. A constable already fits the MVC's express definition of a "police officer" without the addition of any other language, so under a plain reading of sections 102 and 4571, a "police vehicle" must then encompass a constable's vehicle, making it an "emergency vehicle." The express enumeration of "police vehicle" in section 4571, absent some clear indication to the contrary, includes vehicles operated by constables in the course of their duties.

The doctrine of *expressio unius est exclusio alterius* might arguably have come into play in the present case if the General Assembly had decided to restrict the use of emergency lights with greater specificity than it did in the MVC. By way of example, the General Local Government Code defines a "police officer" as

(1) A full-time or part-time employee assigned to criminal or traffic law enforcement duties of any of the following:

(i) A police department of a county, city, borough, town or township.

(ii) Any railroad or street railway police.

(iii) Any campus or university police department, including the State System of Higher Education and its member institutions.

(iv) The Capitol Police.

(v) The Harrisburg International Airport Police.

(vi) An airport authority police department.

(2) A deputy sheriff of a county of the second class.

(3) A security officer of a first class city housing authority or a police officer of a second class city housing authority.

(4) A county park police officer.

The term excludes persons employed to check parking meters or to perform only administrative duties and auxiliary and fire police.

53 Pa.C.S.A. 2162.

Constables do not fit into any of the enumerated categories in this list, so it could be argued that, under the doctrine, their omission could be read as intentional exclusion.

With respect to the MVC, the General Assembly could have easily defined a "police officer" in such a manner – had it wanted to. Rather than apply a detailed list based on an individual's specific employer, title, or duties, *see id*., our legislature *instead* chose to define "police officer" broadly in a way that obviously includes constables. The General Assembly could have also decided to expressly exclude constables, but it did not do so. ***See e.g., id***. (excluding "persons employed to check parking meters or to perform only administrative duties and auxiliary and fire police."). Since constables satisfy

an express definition of "police officer" in the MVC, the doctrine of *expressio unius est exclusio alterius* is simply not germane to the present case.[6]

The Majority's method of comparing sections 102 and 4571 of the MVC to other provisions of that title is more akin to the rule of construction, "Particular controls general" (1 Pa.C.S.A. § 1933). The rule is unavailing, though, because it only applies where a statute is ambiguous, and further, application of the rule does not support the Majority's holding.

If a specific legal rule irreconcilably conflicts with a general one, then the specific rule prevails only as an *exception* in a particular context, and only if the exception was enacted after the enactment of the general rule:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, **the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail**.

---

[6] The Majority cites approvingly to **Mimi Investors**, **Mimi Investors, LLC v. Tufano**, 397 A.3d 1272, 1286 (Pa. 2023), but the case does not support its application of *expressio unius est exclusio alterius*. In **Mimi**, our Supreme Court reasoned that, under the doctrine, it could not read a scienter element into section 1-401(b) of the Pennsylvania Securities Act (PSA), which prohibits making a material misrepresentation when selling or purchasing securities. **See Mimi**, 297 A.3d at 1285 (citing 70 P.S. § 1-401). The central basis of **Mimi's** holding was that, "[c]ritically, there are no terms in Section 1-401(b) related to scienter, and there are no general provisions of the PSA that otherwise supply a scienter element." **Id**., at 1285 (emphasis omitted). Here, conversely, there *is* a general provision in the MVC which supplies a definition of "police officer," making Appellant's vehicle a "police vehicle," absent any clear language or context to the contrary.

1 Pa.C.S.A. § 1933 (emphasis added); *see also* 1 Pa.C.S.A. § 1936 ("Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail."). This is consistent with section 102 of the MVC, which makes its general definitions subject to "additional definitions contained in subsequent provisions of this title which are applicable to specific provisions of this title," as well as "clear" context. 75 Pa.C.S.A. § 102.

As the Majority notes, some provisions of the MVC list constables and police officers separately. *See e.g.*, 75 Pa.C.S.A. §§ 1376(b)(1), (5); 3102; 6309. However, these references in a few isolated and unrelated sections of the MVC do not signify a legislative intent to preclude constables from being equated with police officers in *all other* parts of the MVC. The general definitions of section 102 could not be abrogated, *sub silentio*, in that manner, and full effect may be given to sections 102 and 4571 as I have outlined above. The General Assembly's express enactments are the clearest manifestation of its intent, and exceptions are not meant to swallow general rules. *See* 1 Pa.C.S.A. §§ 1921, 1933, 1936.

It is worth reiterating that under section 102 of the MVC, a general proposition for the *entire title* is that a constable is a "police officer," subject to specific exclusions or the clear context of a particular section. Neither the MVC as a whole, nor section 4571, contain *any* exclusions or alternative definitions, and the Majority is unable to cite any.

Even if we could reasonably construe sections 102 and 4571 as being in conflict, the general definition of a "police officer" in section 102 would still have to prevail over an implicit exception in section 4571. **See** 1 Pa.C.S.A. § 1933. At the time Appellant was stopped on June 15, 2021, the version of section 4571 then in force was effective as of December 18, 2018. **See** 2018, Oct. 19, P.L. 547, No. 83, § 2, effective in 60 days [Dec. 18, 2018]. The version of section 102 then in force was effective as of a *later* date, on February 1, 2021. **See** 2020, Nov. 1, P.L. 1064, No. 106, § 1, effective in 90 days [Feb. 1, 2021].

It follows that the broader statute, section 102, must trump section 4571 even under the Majority's flawed construction. The same is true as to all of the purportedly inconsistent MVC sections cited by the Majority in which police officers and constables were listed separately. **See** 75 Pa.C.S.A. §§ 1376; 3102; 6309; 6309.1 (enacted in 2017; 2015; 2005, and 2005, respectively).[7]

_____

[7] This is not meant to suggest that I agree that these separate statutes represent an implied modification of the general definition of "police officer" in section 102 of the MVC. The statutes cited by the Majority are all unrelated to section 4571 and have no bearing on its construction. I would add that one of those statutes, section 1376, concerns the surrender of registration plates and cards upon suspension or revocation. **See** 75 Pa.C.S.A. § 1376. The statute states that these materials may be surrendered to:

  (1) A designated department employee.
  (2) Members of the Pennsylvania State Police.
  (3) Local police officers.
*(Footnote Continued Next Page)*

- 20 -

### *Absurd or Unreasonable Results*

The Majority attempts to undermine the reasonableness of Appellant's interpretation by suggesting that it would lead to an "absurd" outcome, but I believe the opposite is true. According to the Majority, the General Assembly has, on the one hand, explicitly authorized constables to direct traffic, issue orders to motorists, and make warrantless arrests; but on the other hand, the Majority supposes that the General Assembly also has *implicitly* deprived constables of the right to mount red and blue emergency lights.

Our caselaw recognizes that emergency lights may often be the only reasonable and narrowly tailored means available for law enforcement "to render assistance or mitigate the peril" of a motorist. *See Commonwealth v. Livingstone*, 174 A.3d 609, 631 (Pa. 2007) (citation omitted). "It is undeniable that emergency lights on police vehicles in this Commonwealth serve important safety purposes, including ensuring that the police vehicle is visible to traffic, and signaling to a stopped motorist that it is a police officer, as opposed to a potentially dangerous stranger, who is approaching." *Id*., at 621.

---

(4) Sheriffs or deputy sheriffs.
(5) Constables or deputy constables.

75 Pa.C.S.A. § 1376(b). Under the Majority's logic, the separate enumeration of "Pennsylvania State Police" and "local police officers" in subsections (2) and (3) means that either one group or the other is not a class of "police officer" for purposes of the entire MVC. Of course, this is an untenable construction.

Motorists are required to "comply with any lawful order or direction of" a constable, 75 Pa.C.S.A. § 3102, and constables "shall perform all duties authorized or imposed on them by statute," 44 Pa.C.S.A. § 7151. A constable's statutory obligation to perform its duties of traffic control, and to make arrests, will necessarily implicate the concerns raised in *Livingstone*. *See id*. Accordingly, it is the Majority's interpretation of sections 102 and 4571 which leads to a patently absurd result. The General Assembly would not have expressly authorized constables to carry out numerous law enforcement and traffic-related tasks if it had implicitly intended to deprive constables of the means of performing those duties safely. *See id*.[8]

## Conclusion

A constable is authorized "by law" to make arrests for violations of law, satisfying the definition of "police officer" in section 102 of the MVC. Constables must therefore be classified as "police officers" for the purposes of section 4571 in that title, and a constable's vehicle must in turn be classified as a "police vehicle," which can be equipped with emergency lights.

---

[8] The Pennsylvania Department of Transportation (PennDOT) urges motorists on its website to acknowledge that the "flashing red and blue lights" of emergency vehicles "assist [them] to move quickly through traffic and to answer emergency calls." https://www.pa.gov/agencies/dmv/driver-services/pennsylvania-drivers-manual/online-drivers-manual/special-circumstances-and-emergencies (last visited March, 31, 2026). PennDOT also stresses that constables have a role in responding to emergencies, and that "all drivers must obey the[ir] direction[.]" *Id*.

In upholding the trial court's contrary ruling, I believe the Majority has improperly employed our rules of construction. The MVC and our rules of construction are clear on these points, and even if there were an interpretation of the statutes that might not favor Appellant, that would both violate the rule of lenity and lead to absurd results. Thus, I must respectfully dissent.